[Crim. No. 3135.    Third Dist.    Sept. 1, 1961.]

THE PEOPLE, Respondent, v. EARL T. PENRICE,
Appellant.

Warren G. Reid, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Doris Maier and E. Michael Gianola, Deputy Attorneys General, for Respondent.

PEEK, J.—Defendant appeals from the judgment of conviction entered pursuant to the verdict of the jury finding him guilty of a violation of section 207 of the Penal Code (kidnaping) and from the order of the trial court denying his motion for a new trial.

The record shows that defendant and the victim of the kidnaping, Thelma Burns, had been living together as husband and wife. During the course of this association hostility developed between them, culminating in Thelma's leaving the defendant and moving to the residence of a sister, Mrs. Frances Alexander, in Sacramento.

On the evening of the kidnaping, defendant went to the Alexander residence. When told by Thelma that she did not want to see him, he forced his way into the home, striking her and her sister with such force that he knocked Mrs. Alexander to the floor. He then drew a loaded revolver and threatened to kill everyone in the home unless Thelma accompanied him. At gun point, he then forced Thelma into his car and drove to

the home of a Mrs. Jones (apparently a second ''common-law'' wife of the defendant), and informed her that he was driving to Berkeley.

A short distance from the Jones home, Thelma grabbed defendant's gun and jumped from the car. Defendant stopped the car and pursued her. Thelma attempted to shoot him, but the gun misfired and in the struggle for its possession, he struck her about the head and shoulders with a flash light he was carrying. Seizing the gun from her, he again forced her into the car. As he entered the car on the driver's side, Thelma again attempted to flee, but again he grabbed her; this time she was unable to get out of the automobile. During this struggle, the sweater she was wearing was completely torn from her body, leaving her nude above the waist. They then proceeded to drive to Berkeley to the home of defendant's sister, a Mrs. Thompson. En route they stopped for gasoline, but Thelma made no further attempt to escape. Upon arriving at the Thompson home, Thelma showered and obtained other clothing in place of her own, which was torn and muddy.

According to her testimony, she had no recollection of what occurred until the following morning at approximately 9:30 a. m. when she arrived back at the Thompson home. That afternoon when the defendant learned that a warrant had been issued for his arrest, he and his sister persuaded Thelma to telephone the Sacramento police, urging them to drop the charges against the defendant. The call was placed from a public telephone booth at a service station next door to the Thompson home. The officer who received the call was able to engage Thelma in a sufficiently long conversation to enable the police to trace the call and apprehend the defendant before it was concluded. When arrested, defendant had 18 rounds of 45-caliber automatic shells in his pocket. The gun was later found at the Thompson home.

The defendant testified in his own behalf and denied forcing Thelma to go with him, and vigorously maintained that she had consented voluntarily. In support of this contention, he testified that she spent the night with him in a Berkeley hotel, where they engaged in sexual intercourse. He further stated that at the time of the incident she was eight months' pregnant with a child fathered by him.

Defendant first contends that the testimony of Thelma was inherently improbable: (1) because she failed to seek aid when she had the opportunity to do so; (2) because there were inconsistencies between her testimony at the trial and a

statement she made to police officers shortly after defendant's arrest; and (3) because she was unable to recall any events from the time she left the Thompson home in Berkeley on the evening of January 10, until she returned the following morning.

██ "Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citing case.] To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citing cases.] ██ Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citing case.]'' (*People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758] ; see also *People* v. *Gardner,* 147 Cal.App. 2d 530, 536-537 [305 P.2d 614] ; *People* v. *Carr,* 113 Cal.App. 2d 783, 786 [248 P.2d 977] ; *People* v. *Brown,* 100 Cal.App.2d 207, 209 [223 P.2d 60].)

Also in *People* v. *Braun,* 14 Cal.2d 1, at page 5 [92 P.2d 402], it was said: '' 'A statement, to bear upon its face the brand of improbability, or which may be said to be unbelievable, *per se,* must involve, we think, a claim that something has been done that it would not seem possible could be done under the circumstances described, or involve conduct that no one but a person of a seriously calentured mentality would be likely to do.' (*People* v. *Haydon,* 18 Cal.App. 543, 553 [123 P. 1102, 1114].)''

██ Although Thelma's testimony has its bizarre aspects, when measured by the quoted rule it cannot be said to be so inherently improbable as to warrant a reversal. At all times while in the company of defendant she was forcibly being subjected to his will by violence and threats of killing, many of such threats being made at gun point. The severity of the beating caused her severe pain and impeded her movements for a considerable length of time thereafter. At the time she was taken into custody by the police she was dazed, confused, and bewildered, and in a disheveled state. Furthermore, because of what he had already done to her she was in great fear of the defendant and of what he might do in retaliation.

Even assuming that her testimony was incredible, there was the corroborating testimony of her sister, who witnessed the initial abduction; there was an additional witness living near the Jones residence who testified to seeing a man force a woman into a car at gun point; and there was also Thelma's physical condition.

Defendant also contends that it was error to permit Thelma to testify concerning a similar offense which occurred approximately three months prior to the kidnaping, for which he was convicted. The record in this regard shows that when the district attorney attempted to elicit testimony of the prior occurrences, he was foreclosed by the trial court. On cross-examination, defendant's counsel brought out the fact that in September 1959, after the two had separated, Thelma accompanied him from Los Angeles to Stockton where they lived together for some time. Thereafter, on redirect examination, the district attorney brought out the fact that defendant forcibly compelled her to accompany him to Stockton. We find no error in this regard. The principal function of redirect examination is to reply to new matters drawn out on cross-examination and to explain or rebut adverse testimony or inferences developed on cross-examination. (Witkin, California Evidence, § 697, p. 730; *People* v. *Gregor,* 141 Cal.App. 2d 711 [297 P.2d 734].)

Defendant further contends that the trial court erred in admitting into evidence certain county welfare checks issued in favor of Thelma for her support. The record discloses that when the defendant was first cross-examined on the question of his support of Thelma, his counsel, after voicing an objection, stated, "he can go into it if he wants." Thereupon, the matter of support was fully explored. Even if it could not be said that any objection to the testimony was waived and that it was error to admit the testimony, it cannot be said, in light of the entire record, that such error would be sufficient to warrant a reversal of the judgment.

Defendant finally contends that even if the testimony of Thelma concerning the prior abduction was properly received, the court should have instructed the jury as to the limited purpose of the testimony. Since no instruction was requested limiting the scope of the testimony, defendant will not now be heard to urge such fact as error. (*People* v. *White,* 50 Cal.2d 428 [325 P.2d 985].)

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.