[Crim. No. 8430.   Second Dist., Div. Four.   Oct. 22, 1963].

THE PEOPLE, Plaintiff and Respondent, v. JIMMIE LEE COOPER, Defendant and Appellant.

Robert W. Armstrong, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In an information filed by the district attorney of Los Angeles County, defendant was charged with the crime of robbery, a violation of Penal Code section 211. The information alleged a prior felony conviction. Defendant pleaded not guilty and denied the prior conviction. During

the course of the trial, however, defendant out of the presence of the jury, admitted the prior conviction to be true. Defendant was found guilty of robbery in the second degree. Probation was denied and defendant was sentenced to the state prison for the term prescribed by law, the sentence to run concurrently with any other sentence then being served. Thereafter, defendant filed a notice of appeal and petitioned this court for the appointment of counsel to represent him, which petition was denied, whereupon he prosecuted his appeal in propria persona. On March 13, 1963, the judgment of the trial court was affirmed. A petition for rehearing was thereafter filed by defendant, and on March 28, 1963, the petition was granted and counsel was appointed to represent defendant.

The following evidence was presented at the trial: On December 7, 1961, between the hours of 2 and 2:30 a.m. William Cecil Harris testified he left a tavern and went to a hamburger stand at 45th and Avalon streets. He ordered a cup of coffee and a bowl of chili from its owner and operator Robert Willrich. While the food was being prepared, he told Mr. Willrich he would like to visit the restroom which was located at the rear of the stand. He was on his way there when he heard someone walking behind him. Before he could look back he was hit on the head. He fell to the ground, rolled over on his back and while looking up saw three men. One of them was kicking him in the chest area and another was going through his pockets.

After the robbery Mr. Harris got up and returned to the hamburger stand, reporting the incident to Mr. Willrich who was then standing in the back doorway.

Robert Willrich testified that just after Mr. Harris left to go to the restroom he heard a noise and went to the back door of the stand to investigate. He saw Mr. Harris lying on the ground and three men standing over him, one of whom was going through his pockets. He had previously noticed that three men had followed the victim to the hamburger stand. He recognized defendant as one of the men he saw standing over Mr. Harris. When he asked the men what they were doing they ran down 45th street to an alley. He ran down Avalon Boulevard and cut them off at the end of the alley. He recognized the three men and told them, ''I know you three fellows,'' and further told them he had seen what they had done; that Mr. Harris was a good customer and that they should return his money to him or he would turn them

over to the police. They denied taking anything from Mr. Harris and then fled. He got in his car and proceeded to look for them. When a police car came by, he explained to the officers what had happened. He further testified defendant had been at the hamburger stand as a customer earlier in the evening and had been a frequent customer in the past.

The victim at the time of this incident had $30 in his wallet and $15 in one pocket. This money and his cigarette lighter were taken. Mr. Harris was unable to identify any of the men who struck and robbed him.

Defendant testified in his own behalf. He denied he committed the robbery, stating he was in the area of Wadsworth and Vernon December 7 about 2 a.m., not at the corner of Avalon and Vernon where the robbery occurred. He admitted, however, that he knew Willrich, having patronized his place of business about 18 or 20 times in the past but denied being there on the morning of the robbery. He admitted he was with two other persons in the general area where the robbery took place, but stated he did not know their names. He testified that Willrich had accosted him and the other two men in the alley; that Willrich and two other fellows jumped out of a car and stopped them; that Willrich said "Well, I'm going to call the police," that Willrich and his companions then proceeded to assault him. He acknowledged that Mr. Willrich had asked, "Why don't you give me the money?" and that he had replied, "We don't have any money."

Defendant contends there was insufficient evidence to support the judgment. It is argued that Mr. Willrich's testimony (the only eyewitness testimony identifying defendant as one of the robbers) was inherently improbable, in that it conflicted with the testimony of the robbery victim, Mr. Harris. Mr. Harris has testified that after he was assaulted and robbed, he walked to the hamburger stand and reported the incident to Mr. Willrich, who was at the time standing inside the back door of the stand. Whereupon, according to the testimony of Mr. Harris, Mr. Willrich left the stand. Mr. Willrich testified that when he went to the back of the stand to investigate a noise, he saw defendant and two other men bending over Mr. Harris, who was then lying on the ground; that when he asked them what they were doing, they ran from the scene; that he ran after them. Defendant argues that if Mr. Willrich did what he said he did, Mr. Harris would not, as he testified, have gone back to the stand and

reported the fact of the robbery, since he would have known Mr. Willrich already knew all about it, having just viewed the incident himself. Defendant also argues that according to Willrich's version, Willrich gave chase immediately after witnessing the robbery and did not wait for Mr. Harris to come back to the stand as Mr. Harris testified. This line of argument however, does not consider that Mr. Harris might have been mistaken in his memory of the sequence of events, and understandably so, since, just seconds before he had been beaten on the head and kicked by the men who robbed him. There was also evidence that before he went to the hamburger stand, Mr. Harris had been in a bar drinking beer. Furthermore, even if a conflict in testimony did exist, it was resolved by the jury adversely to defendant. ■ Conflicts in testimony are to be resolved by the trier of fact, not by an appellate court. (*People* v. *Ambrose*, 199 Cal.App.2d 846, 852 [19 Cal.Rptr. 102]; *People* v. *Sinshiemer*, 182 Cal.App.2d 103, 108 [5 Cal.Rptr. 740].)

■ " 'To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citing cases.] ■ Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citing case.]' [Citations.]" (*People* v. *Penrice*, 195 Cal.App.2d 360, 363 [15 Cal.Rptr. 733].)

■ We believe the evidence presented was sufficient to support the judgment. From the evidence, it is clear the defendant was positively identified by witness Willrich as being the man who committed the robbery. He also testified he recognized defendant and the two men on the second occasion when he cut off their escape at the head of the alley. He further testified he was acquainted with this defendant; that defendant had been a frequent customer at the hamburger stand and had in fact been a customer on the night of the robbery.

■ ■ It is contended that the trial judge was guilty of prejudicial misconduct during the cross-examination of defendant. Defendant directs his complaint to a portion of the record which reads as follows:

"Q [by the prosecutor]: Ever been convicted of a felony?

"A Yes, I have.

"Q What was it?

"A Assault with caustic chemicals.

"Q Serve time in the State Prison?

"A (Witness nodding affirmatively.)

"(Defense counsel): Your Honor, I don't believe that is proper.

"THE COURT: It certainly is. Overruled.

"(Prosecutor): Did you?

"A Yes, I have.

"Q When you were arrested on this charge — you remember that, don't you?

"A Arrested when?

"Q When you were arrested for this.

"A Yes.

"THE COURT: Now, did you tell the officers that you thought that these men were going to rob you?

"THE WITNESS: Yes.

"THE COURT: You knew Mr. Willrich, didn't you?

"THE WITNESS: I didn't know whether their intentions was to rob me or not. I knew him, yes."

Defendant maintains that when his defense attorney objected to the question asked by the district attorney as to whether defendant had served time in a state prison, "that the court's emphatic expression of approval of the improper question could only serve to impress the jury ... with the thought that the court did not believe defendant." Defendant also contends that the court committed reversible error in overruling defense counsel's objection to the question. The statement made by the trial judge in which he indicated that the question asked by the district attorney was proper, was made in response to an objection raised by counsel for the defense. It would not, we believe, have indicated to the jury anything other than the fact that the judge felt this evidence was admissible. The trial judge erred in his ruling on the objection. ■ As pointed out in *People* v. *Miller,* 188 Cal. App.2d 156, 170 [10 Cal.Rptr. 326], cross-examination is limited to the fact of conviction and the nature of the crime. Questions as to the length of time served or conditions of parole may not be gone into. ■ ■ In determining whether the error was prejudicial, the test to be applied, as stated by the Supreme Court in the case of *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243], is as follows: "That a 'miscarriage of justice' should be declared only when the court,

'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'' (See also *People* v. *Miller, supra*, 188 Cal.App.2d 156, 171.) Applying this test to the case before us we find no cause for reversal of the judgment.

Defendant also directs our attention to the question asked by the trial judge, ''Now did you tell the officers that you thought these men were going to rob you?'' Defendant maintains that, since at the time this question was asked, there had been no testimony given by defendant which would tend to indicate he thought Mr. Willrich intended to rob him, that the court's question ''could easily have conveyed to the jury the impression that the judge disbelieved defendant.'' We cannot conceive the jury could have been so impressed.

''The court is not powerless to ask a defendant who takes the stand on his own behalf questions designed to elicit facts unfavorable to his defense, provided his constitutional rights are not infringed....'' (*People* v. *Ottey*, 5 Cal.2d 714, 721 [56 P.2d 193].) In this case, rather than being unfavorable to defendant, the question resulted in a self-serving declaration by defendant. Further, since no objection was made at the time, any objection defendant might have had was waived. (*People* v. *Salcido*, 186 Cal.App.2d 684, 689 [9 Cal.Rptr. 57]; *People* v. *Ottey, supra*, 5 Cal.2d 714, 721.)

Judgment of conviction is affirmed.

Burke, P. J., and Kingsley, J., concurred.