[Crim. No. 14863.    Second Dist., Div. One.    Feb. 17, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN JULIUS SESSER, Defendant and Appellant.

Raymond H. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas Kerrigan, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is the second opinion filed by this court in this cause and we do so file because of an order of the Supreme Court as will hereinafter appear.

This is an appeal from a judgment of conviction of robbery.

In an information filed in Los Angeles on August 23, 1967, defendant was charged with robbing Luis Macaya and Nancy Edwards on July 28, 1967, of certain personal property. It was further charged that at the time of the commission of the offense defendant was armed with a .38 caliber revolver and further that he previoulsy had been convicted of burglary (§ 459, Pen. Code) in March 1960 and had served a term in prison therefor and that in October 1961 he had been convicted of possessing a weapon in state prison (§ 4502, Pen. Code) and had served a term in prison therefor. Defendant admitted both prior convictions and in a jury trial was found guilty as charged and was found to have been armed as charged in the information. Defendant was sentenced to the state prison, the time to run concurrently with any other sentence defendant was then serving. Defendant filed a timely notice of appeal from the judgment and an appeal "from the denial of his motion under 1538.5 PC on November 30, 1967." (Motion to return property or suppress evidence.)

A résumé of some of the facts is as follows: shortly before noontime of July 28, 1967, defendant entered the office of Aetna Finance Company at 540 Long Beach Boulevard in Long Beach. Defendant pointed a pistol at Nancy Edwards the cashier, handed a bag to her and said "Fill it up," and told her to stay where she was and not to move. The cashier said, "Everything?" and defendant replied, "Yes, everything" and she then took the money from the cash drawer, placed it in the bag and gave the bag to defendant. Defendant inquired of the cashier as to the location of the safe and she indicated that the safe was in the rear of the office. Defendant went to the safe which was open but contained no money. Defendant ordered the employees, Luis Macaya, Claude Hoehn, Isaac Misrahi and Mr. Peterson to take out their wallets and put them into the bag held by defendant. They all complied. At about this time two women employees were returning from lunch, pushed open the door, saw what was taking place and turned and ran out of the establishment. Defendant said, "Looks like I'm going to have to get somebody now." He then placed the revolver in his trousers, the money in the bag and fled the office. There was about $500 taken from the cash drawer and the employees. Macaya,

Hoehn, Misrahi and the cashier identified defendant as the robber. Macaya and Misrahi were shown a picture of defendant on the day of the robbery and made an identification. They did not attend a lineup.

Richard Williams a postman, was in the vicinity of the northeast corner of 6th and Long Beach Boulevard at about 12:20 p.m. July 28, 1967, and saw a male Negro running across the street and being chased by four or five persons. The Negro yelled the name, "Jo Ann. Jo Ann." Williams noticed that there was only one other person in the whole block, namely, a colored woman seated in a parked car. The Negro man turned and ran up the alleyway.

Officer Williamson, a traffic patrolman, was proceeding in the area on a three-wheel motorcycle at about the time and place mentioned and when someone pointed toward the alleyway the officer gave chase but ultimately lost sight of the person who was running. The person appeared to the officer to be a male Negro, medium weight and wearing a khaki shirt.

Officer Chastain received a call directing him to the scene of the robbery. He had been given a description of the robber, and a two-tone 1959 Chevrolet license number QFC 223 was mentioned as a suspect vehicle. Officer Chastain proceeded to the area and saw a female Negro pacing back and forth on the south side of Sixth Street. Officer Chastain crossed the street to talk with her but was delayed by a citizen who called him over near a furniture store to talk with him. That person told the officer that he believed the woman was involved in the robbery, that she had gotten out of a two-tone 1959 Chevrolet parked nearby and that while she was walking along Long Beach Boulevard a male Negro came running around the corner and yelled at her, "Wait a minute, Jo Ann." The male Negro then ran past her into the alleyway. Chastain approached the female and asked her name. She produced a driver's license score sheet with the name Jo Ann Manassa upon it and when asked what she was doing there she related that she had come to pick up her 14-year-old brother. She stated that she owned the 1959 two-tone Chevrolet with license number QFC 223 which was parked on the north side of Sixth Street. Officer Chastain had watched her walk back and forth for about five minutes before talking with her. She was arrested and taken to the police station. While on the way to the station she lighted a cigarette and tore a match cover in half. The match cover was retrieved by the police. She stated that she was the owner of the car, that John Sesser was her

deceased stepfather. She further stated that a man had run past her and yelled "Wait a minute, John." that that person with others got into a car and drove away.

Officer Fisher was assigned to watch the 1959 two-tone white and brown Chevrolet car on July 28 and at about 10 p.m. he decided to impound it. There was no registration visible in the car and the glove compartment door was hanging open. Officer Fisher looked in the compartment and found a wallet containing various papers, including a temporary receipt and two photographs, each of which depicted a male Negro with a female Negro.

Daniel Robinson, an employee of a used-car agency, about six months previously had sold a 1959 Chevrolet, license number QFC 223 to a person who looked like defendant and who was with a woman at the time of the purchase. The man used the name of John Manassa and the woman the name of Jo Ann Manassa. Each signed his name to the contract in the presence of Robinson and said that they were married. Handwriting exemplars of defendant and Jo Ann were executed and an expert examiner stated that the person who signed the contract Jo Ann Manassa also made out the Jo Ann exemplar, that the signature "John J. Sesser" on the vehicle purchase order and security agreement were written by defendant.

The business records of a motel showed a registration for two people at 11 p.m. July 26, 1967, in the name of John Sesser of 2135 Piru Street, with automobile license number QFC 223. The torn match book which Jo Ann left in the police car was a match book given out by the motel.

On August 3, 1967, some of the employees of Aetna Finance Company, Roger Peterson, Dennis Hoehn and Nancy Edwards, were asked to come to the police station and view certain men in the lineup and after being told by an officer to be certain of their choice and not to be influenced by the decision of anyone else, each of the employees present, out of the presence of the others, identified defendant as the robber in question. A deputy public defender representing the defendant's interests was present with the employees in the jail.

Defendant testified that he and Jo Ann were not married but occasionally spent the night together, that they had purchased the car together because it was against his parole conditions to own a car, that he had suffered two previous felony convictions, that he had not told his parole officer about the car, that he could not marry Jo Ann because she was under age, that on the night of July 27, 1967, they stayed together in the heretofore mentioned motel and that he was not the

robber.

Appellant now asserts that the evidence is insufficient to support the judgment of conviction, that the search of his automobile was unlawful and that his representation by counsel at the lineup was violative of due process.

■ The appellant was positively identified by four of the persons robbed at gun point at the Aetna Finance Company and he was shown to have been an owner of the get-away car parked nearby the scene of the robbery. The evidence of guilt was overwhelming. (See *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778] ; *People* v. *Rosoto,* 58 Cal.2d 304, 321 [23 Cal.Rptr. 779, 373 P.2d 867] ; *People* v. *Saterfield,* 65 Cal.2d 752, 759 [56 Cal.Rptr. 338, 423 P.2d 266] ; *People* v. *Hillery,* 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382] ; *People* v. *Cooper,* 221 Cal.App.2d 448, 452 [34 Cal.Rptr. 519] ; *People* v. *Sinshiemer,* 182 Cal.App.2d 103, 108 [5 Cal.Rptr. 740].)

■ With reference to the search of the car it is clear that there was probable cause to make the search under the circumstances in this case. Police officers may rely upon uncorroborated information supplied by objective private citizens as distinguished from information supplied by paid police informers whose reliability is untested. (See *People* v. *Griffin,* 250 Cal.App.2d 545, 551 [58 Cal.Rptr. 707] ; *People* v. *Lewis,* 240 Cal.App.2d 546, 550 [49 Cal.Rptr. 579].) The search in fact in this instance appears to have been an inventory episode incident to the impounding of the car. (See Veh. Code, §§ 22651, 22850; *Cooper* v. *California,* 386 U.S. 58, 61 [17 L.Ed. 2d 730, 733, 87 S.Ct. 788] ; *People* v. *Webb,* 66 Cal.2d 107, 126 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708].)

Appellant was represented by counsel at the lineup and such counsel, so far as the record indicates, conducted himself properly and fully represented the interests of appellant.

The attempted appeal from the order denying the motion for return of property is dismissed.

This court filed the hereinabove set forth opinion on July 9, 1968, and affirmed the judgment. There was no petition for a rehearing. A petition for a hearing was filed in the Supreme Court. On September 5, 1968, that petition for a hearing was denied and on September 10, 1968, the remittitur of this court issued. Appellant on October 17, 1968, made an application in this court to recall the remittitur and the same was denied on October 28, 1968. Appellant then filed another petition for a hearing in the Supreme Court. The original petition for a hearing, the petition to recall the remittitur and the second

petition for a hearing are for all practical purposes copies of each other and nowhere is it suggested or asserted by appellant that the judgment should be modified because he was not armed as alleged. His contentions have been as heretofore outlined in this opinion, mainly, that the evidence was insufficient to support the judgment. In any event, the Supreme Court did on December 24, 1968, make the following order:

"Appellant's petition for a hearing GRANTED and cause transferred to this court and retransferred to the Court of Appeal, Second District, Division One. That court is directed to recall its remittitur and, after making appropriate modifications to the text of its opinion, to refile the same with the following dispositive order: The judgment is modified by striking therefrom the finding that defendant was armed with a deadly weapon as alleged within the meaning of Penal Code section 12022. In all other respects the judgment is affirmed." (Pen. Code, § 12022.[1])

This court is not inclined to attempt to change the statement of facts for what we stated before and what we now set forth comes from the record and is correct. We cannot alter the facts. Likewise we cannot change what was done in the trial court. As a consequence we make no "appropriate modifications to the text of its opinion."

It will be difficult for the victims of appellant's robbery spree to learn that in law, in effect, they were not really robbed at the point of a gun held in the hands of appellant as they testified to in unequivocal terms. However, in accordance with the directions of the Supreme Court we as a Court of

---

[1]Section 12022 Penal Code: "Any person who commits or attempts to commit any felony within this State while armed with any of the weapons mentioned in Section 12020 or while armed with any pistol, revolver, or other firearm capable of being concealed upon the person, without having a license or permit to carry such firearm as provided by this chapter, upon conviction of such felony or of an attempt to commit such felony, shall in addition to the punishment prescribed for the crime of which he has been convicted, be punishable by imprisonment in a state prison for not less than five nor more than 10 years. Such additional period of imprisonment shall commence upon the expiration or other termination of the sentence imposed for the crime of which he is convicted and shall not run concurrently with such sentence.

"Upon a second conviction under like circumstances the additional period of imprisonment shall be for not less than 10 years nor for more than 15 years, and upon a third conviction under like circumstances the additional period of imprisonment shall be for not less than 15 nor for more than 25 years, such terms of additional imprisonment to run consecutively.

"Upon a fourth or subsequent conviction under like circumstances the person so convicted may be imprisoned for life or for a term of not less than 25 years, within the discretion of the court in which the fourth or subsequent conviction was had."

Appeal in effect must strike the findings of the jury (based upon positive and conclusive evidence) that appellant was armed when he pointed the .38 caliber revolver at the victims in the finance company office and directed them to turn over their property to him. This will do little to enhance the image of the ''Rule of Law.''

It is suggested that the Adult Authority in determining the sentence to be imposed in such a case as this could well follow the law as outlined to that Authority by its legal adviser, the Attorney General (see 4 Ops. Cal. Atty. Gen. 279) and thereby avoid the requirement that a court in effect must make a finding which admittedly is exactly contrary to the facts as found in the record and as the jury so found upon substantial evidence.

The Legislature could well reexamine the law with reference to armed robberies and thereafter adopt a statute in keeping with what was originally intended, namely, that when a gun is used in a robbery there shall be an additional and consecutive term added to the sentence of the robber so using a gun in the commission of such offense.

Pursuant to the directions: ''The judgment is modified by striking therefrom the finding that defendant was armed with a deadly weapon as alleged within the meaning of Penal Code section 12022. In all other respects the judgment is affirmed.''

Wood, P. J., and Lillie, J., concurred.