Filed 1/30/14  P. v. Mendoza CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>HOMERO CORONA MENDOZA,<br><br>    Defendant and Appellant. | F064469<br><br>(Super. Ct. No. BF138461A)<br><br>**OPINION** |

-----

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez and Charity S. Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

-----

*Before Franson, Acting P.J., Peña, J. and Hoff,† J.

†Judge of the Fresno Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## INTRODUCTION

Homero Corona Mendoza appeals following his convictions on a number of felony and misdemeanor sex crimes.  Defendant presents the following three issues on appeal:  (1) the trial court erred by failing to sua sponte instruct the jury on the lesser included offense of attempted lewd and lascivious act with regard to count 2; (2) the trial court erred by sentencing defendant to one year in jail on count 8 because the maximum punishment for the crime is 180 days in jail; and (3) the abstract of judgment must be modified to reflect the statutory bases for the imposition of various penalty assessments. We will remand for modification of the sentence and correction of the abstract of judgment, but otherwise affirm the judgment.

## RELEVANT PROCEDURAL BACKGROUND

In an amended information filed by the Kern County District Attorney on January 5, 2012, defendant was charged as follows:  lewd and lascivious acts with a minor (Pen. Code,[1] § 288, subd. (a), counts 1-3), annoying or molesting a child under 18 (§ 647.6, counts 4, 5 & 9), indecent exposure (§ 314.1, counts 6-7) and sexual battery (§ 243.4, subd. (e)(1)).  He pled not guilty to all counts.

Following trial, the jury convicted defendant on all counts.

On February 24, 2012, defendant was sentenced to a total of 14 years in custody. More specifically, as to counts 1 through 3, defendant was ordered to serve a total of 10 years in state prison.  The court imposed an additional four years in custody for the misdemeanor offenses, to be served in the Kern County jail following completion of the state prison sentence.  Various fines, fees and assessments were also imposed.  That same date, defendant filed a notice of appeal.

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

# BRIEF SUMMARY OF THE FACTS[2]

### *Lewd and Lascivious Conduct*

When N.S. was 11 years old, her mother was dating or friendly with defendant. On three occasions, while she and her mother were staying at or visiting defendant's apartment, defendant touched her.

On the first occasion, it was evening time. N.S., her mother, and defendant were lying on the bed watching television; N.S.'s mother was in the middle. When her mother got up to use the bathroom, defendant moved to her side of the bed and put his hands on N.S.'s stomach, over her shirt. His hands touched the bottom part of her breasts. It made her uncomfortable and she was afraid.

On the second occasion, N.S. was in the living room watching television. It was morning time and her mother got up and went into the bathroom to shower. Defendant approached and sat next to N.S. on the couch. She explained that defendant was hugging her "like a girlfriend" from behind, when he reached to touch her breasts. She pushed his hands away and told him to stop, while moving to another part of the couch. The incident made her uncomfortable.

On the third occasion, N.S. was in defendant's home sitting on the edge of the couch in the living room while her mother was in the kitchen. Defendant came into the living room, moving close to her. He put his hands inside the back of her shirt. It made her uncomfortable.

N.S. did not tell her mother about these incidents because she was afraid. She only told her mother when the police came to their home.

### *Annoying Incidents*

In late April 2011, on a Friday morning, 14-year-old Abigail A. was walking to the school bus stop when a red van pulled up alongside her. The driver asked for her

---

[2]A detailed summary of the facts is not necessary in light of the issues on appeal. When appropriate, the testimony offered and evidence adduced will be referenced with specificity in this court's analysis.

name and phone number, and he asked where she lived. She gave him a false name, but did not provide her address or phone number. She felt "molested" and told her father about the incident.

The following Monday morning, Abigail's father and brother followed behind her as she walked to the bus stop. The same man was sitting in a car parked along her route. He stopped her and gave her a piece of paper with a telephone number on it. He then drove off. Abigail gave the paper to her father, who called police.

Abigail identified defendant as the driver of the vehicle on both occasions. Defendant was subsequently stopped by an officer who had originally responded to a request for assistance by Abigail's father.

*Indecent Exposure Incidents*

**E.P.**

On June 17, 2011, at about 7:00 a.m., 15-year-old E.P. was walking to a summer school physical education class. A newer red truck pulled up alongside her. E.P. was on the sidewalk about seven feet from the truck. The driver asked her for the direction of a street. E.P. pointed in the direction of the street then noticed the driver had his penis out and was playing with it. She felt strange and did not know what to do. She continued walking toward school and the driver drove off.

Once she got to the school, E.P. told a teacher. She then reported the incident to security. A couple days later, she was shown a picture of defendant. He was the driver of the truck.

**Joanna**

Later that same morning, 17-year-old Joanna R. was also walking to school. Since she was running late that morning, she was walking alone instead of with her brother. About a block from the school, a newer red truck pulled up and stopped in the middle of the street. Joanna was about seven or eight feet away on the sidewalk. The driver asked her for the direction to a street and she pointed in that direction. When the driver asked

4.

her how he could get to the street, she told him which streets to take. He began to converse with her but she thought the situation was strange and kept walking.

The driver continued to follow her slowly in the truck, asking her more questions. She thought he was "weird," and then noticed he was "sweaty and stuff." His penis was exposed and he was masturbating. Joanna was afraid and walked faster. The driver continued to follow her, but eventually made a U-turn.

When Joanna got to the school she immediately reported the incident. Although she could not recall his name, Joanna recognized the truck's driver as the landlord or owner of a home her family had previously rented. She called her mother and asked her mother for the man's name. Her mother looked it up on the rental agreement—it was defendant. She gave the name to school police. Joanna later identified a photograph of defendant as the driver of the truck.

### Sexual Battery Incident

Twenty-two-year-old Nicole C. and friends had been wine tasting in Paso Robles on June 4, 2011. They had traveled by limousine. When the group returned to Bakersfield, she and two of those friends—David and Armando—spent the evening at a bar. When the bar closed, the group intended to call for a cab, but cabs were already waiting outside. One driver said he was a taxi; Nicole identified defendant as the driver.

After the cab dropped off David, she and Armando intended to travel to his home together. They stopped at an ATM for additional funds. Nicole withdrew $20 from the ATM to add to the $20 she had in her pocket. About this time, Armando expressed a desire to go to a friend's home nearby; Nicole refused. Armando then left on foot.

Eventually the cab pulled over and the driver told Nicole, who was sitting alone in the backseat, "No money. You show me your pussy." As the driver made this remark, he reclined his seat, took off his seatbelt, and touched Nicole's breasts. She was frightened and wanted out of the cab. She threw $20 into the front seat and said, "No, let me out now." The driver repeated, "No money. You show me your pussy." Nicole

threw the other $20 into the front of the cab, said, "No. Let me out. I'm not like that," and managed to unlock the door. She got out of the cab and ran without looking back.

Because her cell phone battery was dead, Nicole flagged down another car and asked the driver to call police. The driver did so. She spoke with police when they arrived. She was terrified.

About two weeks later, Nicole viewed a photo lineup and identified defendant. Prior to trial, she identified defendant in a live lineup.

## DISCUSSION

### I. The Alleged Instructional Error

Defendant argues the trial court erred in failing to instruct, sua sponte, on the lesser included offense of attempted lewd and lascivious acts with a child under the age of 14 years. More particularly, as to count 2, he claims the evidence shows he was not touching N.S., and that N.S. herself testified she pushed his hand away when he attempted to touch her. Therefore, he contends the jury could have found he was guilty only of an attempted lewd and lascivious act. We are not persuaded.

#### A. Applicable Legal Standards

"A court must instruct sua sponte on general principles of law that are closely and openly connected with the facts presented at trial. [Citation.]" (*People v. Lopez* (1998) 19 Cal.4th 282, 287.) "This sua sponte obligation extends to lesser included offenses if the evidence 'raises a question as to whether all of the elements of the charged offense are present and there is evidence that would justify a conviction of such a lesser offense. [Citations.]' [Citations.]" (*Id*. at pp. 287-288.) "As we stated recently, 'A criminal defendant is entitled to an instruction on a lesser included offense only if [citation] "there is evidence which, if accepted by the trier of fact, would absolve [the] defendant from guilt of the greater offense" [citation] *but not the lesser*. [Citations.]' [Citation.]" (*Id*. at p. 288.)

An offense is necessarily included with a charged offense if the greater offense cannot be committed without also committing the lesser offense. (*People v. Lopez*,

6.

*supra*, 19 Cal.4th at p. 288.) An attempt to commit a charged crime is a lesser included offense to the completed crime. (*In re Sylvester C.* (2006) 137 Cal.App.4th 601, 609.) The trial court has a sua sponte duty to instruct on a lesser included offense when substantial evidence, viewed in the light favorable to the defendant, warrants such an instruction. (*People v. Turk* (2008) 164 Cal.App.4th 1361, 1368, fn. 5.) However, a "court is not obliged to instruct on theories that have no such evidentiary support." (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) "'"[I]f there is no proof, other than an unexplainable rejection of the prosecution's evidence, that the offense was less than that charged, such instructions [on lesser included offenses] shall not be given."'" [Citation.]" (*People v. Friend* (2009) 47 Cal.4th 1, 51-52.)

If a trial court fails to instruct on a lesser included offense that is supported by the evidence, the error is one of state law alone. (*People v. Breverman*, *supra*, 19 Cal.4th at p. 165.) Such an error does not require reversal unless "an examination of the entire record establishes a reasonable probability that the error affected the outcome." (*Id.* at pp. 165; see *id.* at pp. 165-178; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

**B.      N.S.'s Testimony**

We find it valuable to set forth N.S.'s testimony concerning the act charged in count 2. During direct examination, the following testimony was elicited:

"Q. What happened the second time?

"A. When it was morning time, I was barely was—they were sleeping. I was awake. I was in the living room watching TV, and then my mom went to the rest room. She was taking a shower, and he came up to me. And he was—and then he said—he was—I was in a big couch. I was in a big couch watching TV, and he was sitting next to me. He went outside of his room. He was coming to the living room.

"He was sitting next to me. He was about to touch me but I pushed him away and then he went to sit on the other couch. [¶] … [¶]

"Q. … What was he doing with his hands before you pushed him away?

"A. He was like—like he was—like—

"Q. Was he reaching for you?

"A. Yeah.

"Q. And what part of your body was he reaching for?

"A. From right here on top.

"Q. Your boobs?

"A. Yeah.

"Q. Okay. And when he's reaching for them, what did you do when he did that?

"A. I was sitting down. He was still reaching me then I just like pushed him away, and I told him to stop it. And I pushed him away. Then he just left to the other couch. That's when my mom came out.

"Q. Okay. And he's reaching after your boobs. You pushed him away?

"A. Uh-huh.

"Q. How did that make you feel?

"A. Uncomfortable."

On cross-examination, testimony regarding the second incident was brief:

"Q. Now, the second time, was this at your home or his home?

"A. His home.

"Q. That's when he reached out to you but he didn't touch any private parts?

"A. No."

On redirect examination, the following testimony was elicited:

"Q. We're almost done. You can go home. The second time— okay, the second time when this happened, you said the defendant reached out—reached out to you. Did he come up from in front of you or behind you?

"A. He was sitting right here, and he was like—he was like he wasn't—he was hugging me but he wasn't touching me. Like a hug, like a

8.

girlfriend hug. He was just like hugging me. That's when he was about to reach but I pushed him away.

"Q. You said he was like hugging you. Was he doing that from behind or in front of you?

"A. Behind.

"Q. From behind?

"A. Yeah.

"Q. Okay. You said it was like a girlfriend hug. What does that mean?

"A. Like when—like, we were going out.

"Q. Okay. You're not his girlfriend?

"A. No.

"Q. And I know he didn't touch your skin but was—where [*sic*] his hands over your clothing on your boobs?

"A. Uh-huh."

**C.      Analysis**

A violation of section 288 is committed when a person touches a child under the age of 14 years with the specific intent to arouse the sexual desires of either the child or that person. (§ 288, subd. (a); *People v. Martinez* (1995) 11 Cal.4th 434, 452.) An attempt to commit a crime is complete where the perpetrator possesses the specific intent to commit the target crime and performs a direct but ineffectual act toward its commission. (*People v. Memro* (1985) 38 Cal.3d 658, 698, overruled on other grounds in *People v. Gaines* (2009) 46 Cal.4th 172, 181.) Thus, a perpetrator who completes a touching with the requisite specific intent also necessarily completes an attempt to commit the crime. (See *In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1381.) Such are the circumstances here.

The evidence establishes that defendant touched N.S., holding her in a "girlfriend hug" on the couch in his living room while her mother was in another room. He then

attempted to touch N.S.'s chest or breast area, and she pushed his hand away. His crime was completed when he hugged N.S. with the requisite specific intent. It is not relevant that he was thwarted in his further attempt to touch her breasts. (*People v. Martinez*, *supra*, 11 Cal.4th at p. 452; *People v. Memro*, *supra*, 38 Cal.3d at p. 698; *In re Ryan N.*, *supra*, 92 Cal.App.4th at p. 1381.) Defendant asserts the jury could have believed he "innocently" hugged N.S., but there was no evidence offered for this proposition. N.S.'s testimony was clear. The hug was not an innocent hug; rather, it was a "girlfriend hug," or as N.S. explained, the type of hug that would occur between persons who had an intimate relationship. She had no such relationship with defendant. Defendant's assertion lacks merit.

The evidence did not raise a question as to whether all of the elements of the charged offense were met, nor was there evidence that would justify a conviction of a lesser offense. (*People v. Lopez*, *supra*, 19 Cal.4th at pp. 287-288.) As a result, the trial court was not obligated to instruct the jury on the lesser included offense of attempted lewd and lascivious act. (*Id*. at p. 288.)

Defendant argues, without any citation to legal authority, that because N.S.'s testimony regarding the hug occurred during redirect, that testimony is not credible. "'Redirect examination' is an examination of a witness by the direct examiner subsequent to the cross-examination of the witness." (Evid. Code, § 762.) "Upon redirect examination it is proper to permit the witness to state facts and circumstances that tend to correct or repeal any wrong impressions or inferences that arise from the matter drawn out on cross-examination, notwithstanding such facts and circumstances may prejudice the case for the defendant." (*People v. Corey* (1908) 8 Cal.App. 720, 725.) "The principal function of redirect examination is to reply to new matters drawn out on cross-examination and to explain or rebut adverse testimony or inferences developed on cross-examination." (*People v. Penrice* (1961) 195 Cal.App.2d 360, 364.)

Here, the testimony elicited on redirect was necessary to correct any wrong impression left by the testimony given on cross-examination. That testimony was brief

and could have left the jury with the impression N.S. was never touched during the second incident.

Finally, defendant argues the trial court's failure to instruct the jury on attempted lewd and lascivious conduct amounted to prejudicial error.  Further, he contends that because his due process rights under the Fifth and Fourteenth Amendments were violated, this court should review the purported error under the federal standard of *Chapman v. California* (1967) 386 U.S. 18.

We have already determined there was no error.  Notwithstanding that finding, even if we were to agree the trial court should have instructed on the lesser included offense of attempt, any error in failing to give such instructions would have been harmless.

> "'The erroneous failure to instruct on a lesser included offense generally is subject to harmless error review under the standard of *People v. Watson* (1956) 46 Cal.2d 818, at pages 836–837.  Reversal is required only if it is reasonably probable the jury would have returned a different verdict absent the error or errors complained of.  [Citations.]'  (*People v. Rogers* (2006) 39 Cal.4th 826, 867–868, fn. omitted; and see *id*., p. 868, fn. 16 [the footnote describes potential exceptions for certain federal constitutional violations]; see also *People v. Ledesma* (2006) 39 Cal.4th 641, 716; *People v. Sakarias* [(2000)] 22 Cal.4th [596,] 621 [a violation of the duty imposed by state law to instruct on lesser included offenses is evaluated under the *Watson* standard]; *People v. Breverman*[, *supra*,] 19 Cal.4th 142, 165 [same]; but see *People v. Elliot* [(2005)] 37 Cal.4th [453,] 475 [characterizing erroneous failure to instruct on a lesser included offense as a denial of due process of law to be evaluated on appeal under the standard set forth in *Chapman v. California*, [*supra*,] 386 U.S. 18, 24.)"  (*People v. Prince* (2007) 40 Cal.4th 1179, 1267.)

We do not believe it is reasonably probable the absence of an attempted lewd and lascivious act instruction could have affected the outcome of the jury's verdict.  Indeed, any error would have been harmless beyond a reasonable doubt.  As explained above, the lewd and lascivious act was completed when defendant hugged N.S.  The fact he was not successful in subsequently touching her breasts because she thwarted his attempt by pushing his hands away is simply not relevant.  The crime had already been committed

11.

by the time N.S. pushed defendant's hands away when he reached for her breasts. The evidence supporting the judgment is strong.

Moreover, there is little, if any, evidence of an attempted lewd and lascivious act. Even if we were to find there was evidence of an attempt, on these facts, any such evidence would be so weak as to be insubstantial. (*People v. Moye* (2009) 47 Cal.4th 537, 556 [failure to give jury lesser offense choice does not require reversal when evidence supporting greater offense is sufficiently strong that it is unlikely a properly instructed jury would have selected the lesser offense].)

In conclusion, on this record, the trial court was not obligated to instruct the jury on the lesser included offense of attempted lewd and lascivious act. (*People v. Breverman*, *supra*, 19 Cal.4th at p. 162.)

## II.  The Sentence Imposed in Count 8

Section 243.4, subdivision (e)(1) provides that "[a]ny person who touches an intimate part of another person, if the touching is against the will of the person touched, and is for the specific purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of misdemeanor sexual battery, punishable by a fine … or by imprisonment in a county jail not exceeding six months, or by both that fine and imprisonment."

At sentencing on February 24, 2012, pertinent to this issue, the court sentenced defendant as follows:

> "Count 8, a violation of … Section 243.4, sub (e), sub (1), defendant's application for probation is denied. He is sentenced to the Kern County Jail for a period of *one year*. This sentence is to be served consecutive with the sentenced imposed above." (Italics added.)

Defendant contends the trial court imposed an illegal sentence when it imposed a term of one year, versus six months, in county jail. Plaintiff concedes the error. We agree with defendant and accept plaintiff's concession. Accordingly, we order the minute order dated February 24, 2012, be modified to correct the unauthorized sentence and provide for a sentence of 180 days in county jail as to count 8. Additionally, the abstract of judgment on page 2, item 11, should be corrected to read as follows: "Defendant to

12.

serve a total of 10 years in the Department of Corrections as to counts 1, 2, 3 and defendant to serve a total of three years six months in the Kern County jail for remaining counts upon completion of prison sentence."

## III. The Abstract of Judgment Must Be Modified

Defendant contends the trial court erred when it imposed various penalty assessments related to counts 1 through 3 because the abstract of judgment does not separately list those penalties and their statutory bases. Plaintiff agrees and concedes the issue.

At sentencing, the trial court imposed the following sentences regarding counts 1 through 3:

> "[THE COURT:] As far as Count 1, violation of … Section 288, sub (a), probation is denied. The defendant is sentenced to the Department of Corrections for the midterm of six years. [¶] … [¶]
>
> "He is ordered to pay a fine of $300 pursuant to … Section 290.3, plus a penalty assessment of $840, as referenced and included in the probation officer's report at page 15, lines 8 through 13; plus a 30-dollar fee pursuant to Government Code Section 70373; plus a $40 fee pursuant to … Section 1465.8.
>
> "As to Count 2, a violation of … Section 288, sub (a), probation is denied. Defendant is sentenced to the Department of Corrections for a period of two years. That sentence is to be served concurrent. Two years is one-third the midterm. That sentence is to be served consecutive with the sentence imposed above. [¶] … [¶]
>
> "He is ordered to pay a fine of $500 pursuant to … Section 290.3, plus a penalty assessment of $1400, as referenced and incorporated on page 16, lines 1 through 6. [¶] … [¶]
>
> "As to Count 3, a violation of … Section 288, sub (a), probation is denied. The defendant is sentenced to the Department of Corrections for one-third the midterm or two years. That sentence is to be served consecutive with the sentence imposed above. [¶] … [¶]
>
> "He is ordered to pay a $500 fine pursuant to … Section 290.3, plus a penalty assessment of $1,400, as referenced and incorporated in the probation officer's report at page 16, line 22, through page 17, line 3."

13.

The probation officer's report provides the following, in relevant part:

"*(As to the penalty assessment of $840.00, that consists of individual assessments in the amounts of $300.00 (… Section 1464(a)), $210.00 (Government Code Section 76000(a)), $30.00 (Government Code Section 76104.6), $90.00 (Government Code Section 76104.7), $150.00 (Government Code Section 70372(a)) and $60.00 (… Section 1465.7.)"

"*(As to the penalty assessment of $1,400.00, that consists of individual assessments in the amounts of $500.00 (… Section 1464(a)), $350.00 (Government Code Section 76000(a)), $50.00 (Government Code Section 76104.6), $150.00 (Government Code Section 76104.7), $250.00 (Government Code Section 70372(a)) and $100.00 (… Section 1465.7.)"

"*(As to the penalty assessment of $1,400.00, that consists of individual assessments in the amounts of $500.00 (… Section 1464(a)), $350.00 (Government Code Section 76000(a)), $50.00 (Government Code Section 76104.6), $150.00 (Government Code Section 76104.7), $250.00 (Government Code Section 70372(a)) and $100.00 (… Section 1465.7.)"

The abstract of judgment filed February 27, 2012, does not separately list the penalties imposed. Rather, it reads as follows: "Defendant ordered to pay as to count 1: $300 plus penalty assessment of $840 pursuant to PC 290.3. Defendant ordered to pay as to count 2: $500 plus penalty assessment of $1400 pursuant to PC 290.3. Defendant ordered to pay as to count 3: $500 plus penalty assessment of $1400 pursuant to PC 290.3." (Some capitalization omitted.)

Again, we agree with defendant and accept plaintiff's concession. In *People v. High* (2004) 119 Cal.App.4th 1192, the defendant was convicted of various crimes and sentenced to state prison. (*Id*. at p. 1195.) There were clerical errors in the abstract of judgment. (*Id*. at pp. 1199-1200.) Noting that although "a detailed recitation of all the fees, fines and penalties on the record may be tedious" and that "California law does not authorize shortcuts," the appellate court explained that "[a]ll fines and fees must be set forth in the abstract of judgment" because it "'""digest[s] or summarize[s]"'"" the judgment and without such specification the Department of Corrections and Rehabilitation "cannot fulfill its statutory duty to collect and forward deductions from

14.

prisoner wages to the appropriate agency." (*Id*. at p. 1200.) Thus, the Court of Appeal remanded to the trial court to correct the clerical errors. (*Id*. at pp. 1200-1201.)

Here, the trial court's reference to the probation report and its incorporation of certain portions thereof was proper. (See *People v. Voit* (2011) 200 Cal.App.4th 1353, 1373; *People v. Sharret* (2011) 191 Cal.App.4th 859, 864.) Nevertheless, after oral pronouncement of the sentence occurs, "[t]he responsibility then falls to the trial court clerk to specify the penalties and surcharge in appropriate amounts in the minutes, and more importantly, the abstract of judgment." (*People v. Sharret*, *supra*, at p. 864; see *People v. Voit*, *supra*, at p. 1373.) Neither the minute order nor the abstract of judgment specify the penalties and surcharges imposed here. Therefore, we will remand and direct the trial court to correct both the minute order and the abstract of judgment accordingly. (*People v. High*, *supra*, 119 Cal.App.4th at p. 1200.)

## DISPOSITION

As to counts 1 through 3, the clerk of the superior court is directed to prepare an amended abstract of judgment, specifically listing the penalty assessments imposed by the trial court along with the statutory basis for each assessment imposed, as described in part III. of this opinion. Further, as to count 8, the judgment is modified to impose a sentence of 180 days. The clerk of the superior court is directed to forward a copy of the amended abstract of judgment to California's Department of Corrections and Rehabilitation. The judgment is affirmed in all other respects.