[Crim. No. 7574. First Dist., Div. One. Nov. 5, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. FREDDIE LOUIS HUNTER, Defendant and Appellant.

## COUNSEL

Lee W. Cake, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Timothy A. Reardon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ELKINGTON, J.**—Defendant Freddie Louis Hunter appeals from judgments (in actions 2893, 2902), entered upon jury verdicts, finding him guilty of three charges of second degree burglary. (Pen. Code, §§ 459-461.) He also appeals from an order revoking probation which had been granted following his conviction of an earlier violation of Vehicle Code section 10851 (action 2439).

Subtantial evidence was placed before the jury in support of each of the three burglary charges; no contention to the contrary is made; nor is error in the probation violation proceedings pointed out. Since the order there made was based on the burglary convictions, the probable theory of appeal is that the order revoking probation must fall if the burglary convictions are reversed.

Hunter's first contention is that certain evidence, including the only evidence supporting one of the burglary charges, was improperly allowed because it was the product of an illegal search of an automobile. The facts relating to this contention follow.

Around 10 o'clock one evening, police officers saw a 1953 or 1954 Chevrolet traveling 50 to 60 miles per hour on a street with a 35-mile-per-hour speed limit. Being occupied with other matters they did not pursue the car. Fifteen minutes later the officers saw what appeared to be the same automobile parked in an alley. The area, being nonresidential, was one where cars were not normally parked during evening hours; it had recently been the target of many burglaries. Approaching the car the officers noted that its motor was warm, its doors unlocked and the side window on the

driver's side rolled down. Pasted on the car was a "paper plate" indicating that it had recently been purchased, but the customary temporary permit did not appear on the windshield. On the seat of the car the officers could see a pair of binoculars, a stereo tape deck and several screwdrivers, one of them about 18 inches long. Looking further for information of the car's ownership, and believing that it possibly had been used in a burglary, the officers opened the car's door and glove compartment. There in addition to a registration certificate the officers saw a roll of stamps, two one-dollar bills, a box partially filled with loose change, and a key marked "box to 7-Up Machine." The officers replaced the property and hearing gunfire, took off in its direction. A few minutes later they saw and apprehended Hunter. A telephone check thereafter made at the police station with the parked car's registered owner indicated that it had been sold to an unknown person.

Later that evening Hunter, under arrest for burglary, was being transported by other officers to the county jail. As the police car passed the subject automobile he exclaimed, "That's my car." The police thereafter impounded the car and made an inventory of its contents, some of which, including property seen earlier in the glove compartment, was later identified as having been stolen that night from the Easom Boat Works and from Joe Ray's Auto Body Shop.

It is the search of his car in the alley of which Hunter complains. No contention is made that the later impoundment and the inventory of the car's contents were improper. Such a contention, if made, would be invalid. (See *People* v. *Sesser,* 269 Cal.App.2d 707, 711 [75 Cal.Rptr. 297]; *People* v. *Garcia,* 214 Cal.App.2d 681, 684 [29 Cal.Rptr. 609].)

■ We observe no constitutional impropriety in the initial search of Hunter's automobile. The police had come upon an unattended automobile late at night in a nonresidential area which had been the subject of may burglaries. No ownership or registration information was visible. Valuable property was exposed inside the vehicle, yet the doors were unlocked and a window left open. A large screwdriver which could obviously be used as a prying burglar tool was also visible. The officers were permitted by Vehicle Code section 2805 to enter the car for the purpose of investigating its title and registration. (See *People* v. *Grubb,* 63 Cal.2d 614, 618 [47 Cal.Rptr. 772, 408 P.2d 100]; *People* v. *Monreal,* 264 Cal.App.2d 263, 265 [70 Cal.Rptr. 256].) They did no more, leaving all property as it was found.

■ Furthermore, it appears that the evidence upon which Hunter's conviction was based may not reasonably be considered as the fruit of the

questioned search. When Hunter, under arrest, pointed out his car to the police it became reasonable under the circumstances for them to impound the vehicle rather than leave it unattended in the alley. It was in the course of the ensuing inventory, unrelated in any way to the first search, that the car's contents were found to be stolen property.

█ Hunter next complains of certain instructions given the jury. They were instructed in the language of CALJIC No. 201, Alternate (New), as follows: "Every person who enters any structure such as is shown by the evidence in this case, with intent to unlawfully steal, take and carry away the personal property of another, of any value, is guilty of burglary. The essence of a burglary is entering a place such as I have mentioned with such specific intent; and the crime is complete as soon as the entry is made, regardless of whether the intent thereafter is carried out." He contends that the words *"such as is shown by the evidence in this case"* could reasonably be understood by the jury as the court's suggestion as a fact that he (Hunter) had entered such a structure. We believe it inconceivable that the court's language could be so misunderstood. The instruction clearly refers to the three "structures" described in the evidence which were *alleged* to be the subject of the charged burglaries. Other instructions clearly gave to the jury the issue *whether* Hunter had made the entries required by law to convict.

█ Hunter also claims error in the trial court's failure to instruct that "evidence of an oral admission should be viewed with caution." The admission which, Hunter asserts, called for such an instruction, was his previously mentioned exclamation, "That's my car." Code of Civil Procedure section 2061, subdivision 4, repealed as of January 1, 1967, but before Hunter's trial, required such an instruction to be given in proper cases, on the court's own motion. (*People* v. *Deloney,* 41 Cal.2d 832, 840 [264 P.2d 532].) We need not determine whether, since the section's repeal, such an instruction is still mandatory for we conclude that the court's failure would nevertheless have been harmless error.

The reason for the requirement of the cautionary instruction was the questionable reliability of testimony of earlier "oral admissions" of a person charged with crime. (See *People* v. *Bemis,* 33 Cal.2d 395, 399 [202 P.2d 82].) Here the officer's recollection and testimony were demonstrated to be accurate. They impounded the automobile which, they testified, was pointed out to them by Hunter. But for some statement of Hunter the officers admittedly would have no reason to believe that he had any connection with the car. Yet when the vehicle's contents were inventoried, property stolen that night in the burglary of Joe Ray's Auto Body Shop was found. The remainder of the property taken in that burglary was found on Hunter's person when arrested. This evidence strongly suggests that Hunter did in fact exclaim, "That's my car" as recalled and testified by the officers.

It convinces us that it is not reasonably probable that a result more favorable to Hunter would have been reached in the absence of the claimed error. (See *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

Hunter's final contention concerns the racial composition of the jury panel called for the trial of his case. Nothing appears in the record to indicate the "systematic exclusion of Negroes" from jury panels condemned in *Coleman* v. *Alabama,* 377 U.S. 129 [12 L.Ed.2d 190, 84 S.Ct. 1152]; Hunter does not contend otherwise. The point is therefore without merit.

The judgments and the order revoking probation are affirmed.

Molinari, P. J., and Sims, J., concurred.