[Sac. No. 7882. In Bank. Apr. 30, 1971.]

SHARON RAE MOZZETTI, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## Counsel

Miller & Ford and James T. Ford for Petitioner.

No appearance for Respondent.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Doris H. Maier, Assistant Attorney General, Roger E. Venturi, Daniel J. Kremer and Michael V. Franchetti, Deputy Attorneys General, for Real Party in Interest.

## Opinion

**MOSK, J.**—When authorized by statute to remove from the highway and store a vehicle until the owner subsequently reclaims it, police officers routinely compile a complete inventory of the contents of the vehicle prior to storage. ▮▮▮ Petitioner, charged with possession of marijuana, seeks a writ of mandate to compel the respondent superior court to suppress evidence seized when police inventoried the contents of her automobile. We

consider whether this common police practice constitutes an unreasonable search and seizure in violation of the Fourth Amendment.

On August 28, 1970, petitioner, while driving in Sacramento, was involved in a two-car collision. She sustained injuries in the accident and was promptly removed to the hospital by ambulance. When police arrived at the scene, they determined that petitioner's vehicle was blocking the roadway and arrangements were made to have the car towed to police storage, pursuant to Vehicle Code sections 22651, subdivisions (b) and (g), and 22850.[1]

In accordance with standard procedure, Officer Nichols of the Sacramento Police Department was instructed to prepare an inventory of the contents of petitioner's automobile prior to having it towed to police storage facilities. Nichols filled out an inventory form which listed the vehicle's equipment, such as mirrors and radio, and all of its contents in the front and back seats, the glove compartment, and the trunk.

In the course of his inventory, the officer saw a small suitcase on the backseat of the car. Finding the suitcase unlocked he opened it, apparently to determine if it contained any articles of value. Inside he found a plastic bag containing a quantity of marijuana. Because petitioner's automobile was a convertible, at the conclusion of the inventory several items found in the car's interior, including the suitcase, were locked in the trunk. The car was then towed to a police storage garage and the keys were later turned over to the petitioner. The marijuana, of course, was seized.

On October 13, a preliminary hearing was held and petitioner was bound

---

[1]Vehicle Code section 22651 provides in part as follows: "Any member of the California Highway Patrol or any regularly employed and salaried deputy of the sheriff's office of a county in which a vehicle is located or any regularly employed and salaried officer of a police department in a city in which a vehicle is located . . . may remove a vehicle from a highway under the following circumstances: . . . (b) When any vehicle is left standing upon a highway in such a position as to obstruct the normal movement of traffic or in such a condition as to create a hazard to other traffic upon the highway. . . . (g) When the person or persons in charge of a vehicle upon a highway are by reason of physical injuries or illness incapacitated to such an extent as to be unable to provide for its custody or removal."

The section also authorizes removal of certain illegally parked vehicles under some circumstances (subds. (d), (e), and (j)) and vehicles reported stolen (subd. (c)). Subdivision (h) authorizes removal "[w]hen an officer arrests any person driving or in control of a vehicle for an alleged offense and the officer is by this code or other law required or permitted to take and does take the person arrested before a magistrate without unnecessary delay."

Vehicle Code section 22850 provides: "Whenever an officer or employee removes a vehicle from a highway, or from public or private property, unless otherwise provided, he shall take the vehicle to the nearest garage or other place of safety or to a garage designated or maintained by the governmental agency of which the officer or employee is a member, where the vehicle shall be placed in storage."

over for trial on an information charging her with one count of possession of marijuana. Petitioner moved to suppress the evidence against her, the bag of marijuana found in the suitcase; the motion under Penal Code section 1538.5 was denied. She now seeks mandamus to compel the suppression of the evidence on the ground that the inventory made of her automobile was a search without a warrant in violation of the Fourth Amendment.

The Attorney General makes no contention that petitioner consented to a search of her automobile, or that there was probable cause to believe the vehicle contained contraband or evidence of crime. And, since there was no arrest, it is not claimed her vehicle could be searched incident to a valid arrest. Rather, the People rely on a series of cases in the Courts of Appeal purporting to validate inventory searches whenever the police are authorized to remove and store vehicles. (*Martinez* v. *Superior Court* (1970) 7 Cal. App.3d 569 [87 Cal.Rptr. 6]; *People* v. *Andrews* (1970) 6 Cal.App.3d 428 [85 Cal.Rptr. 908]; *People* v. *Havenstein* (1970) 4 Cal.App.3d 710 [84 Cal.Rptr. 528]; *People* v. *Superior Court* (1969) 2 Cal.App.3d 304, 309 [82 Cal.Rptr. 766]; *People* v. *Hunter* (1969) 1 Cal.App.3d 461, 464 [81 Cal.Rptr. 750]; *People* v. *Marchese* (1969) 275 Cal.App.2d 1007 [80 Cal.Rptr. 525]; *People* v. *Superior Court* (1969) 275 Cal.App.2d 631 [80 Cal.Rptr. 209]; *Bramlette* v. *Superior Court* (1969) 273 Cal.App.2d 799, 806 [78 Cal.Rptr. 532]; *People* v. *Sesser* (1969) 269 Cal.App.2d 707 [75 Cal.Rptr. 297]; *People* v. *Laursen* (1968) 264 Cal.App.2d 932, 941 [71 Cal.Rptr. 71]; *People* v. *Norris* (1968) 262 Cal.App.2d Supp. 897 [68 Cal.Rptr. 582]; *People* v. *Roth* (1968) 261 Cal.App.2d 430 [68 Cal.Rptr. 49]; *People* v. *Harris* (1967) 256 Cal.App.2d 455 [63 Cal.Rptr. 849]; *People* v. *Gil* (1967) 248 Cal.App.2d 189 [56 Cal.Rptr. 88]; *People* v. *Garcia* (1963) 214 Cal.App.2d 681 [29 Cal.Rptr. 609]; *People* v. *Odegard* (1962) 203 Cal.App.2d 427 [21 Cal.Rptr. 515]; *People* v. *Myles* (1961) 189 Cal.App.2d 42, 48 [10 Cal.Rptr. 733]; *People* v. *Nebbitt* (1960) 183 Cal.App.2d 452 [7 Cal.Rptr. 8]; *People* v. *Simpson* (1959) 170 Cal.App.2d 524 [339 P.2d 156]; *People* v. *Ortiz* (1956) 147 Cal.App.2d 248 [305 P.2d 145].)

Although the foregoing cases provide no persuasive rationale to justify the practices which their holdings and dicta validated, two principal theories emerge as the basis of the doctrine urged by the People in the instant case to permit police to inventory the contents of vehicles lawfully in their custody under the removal and storage sections of the Vehicle Code. First, it is said that an "inventory" of the type conducted here and in the cited cases is not a "search" as the term is used in the constitutional sense and, therefore, the procedure need not be justified within the rubric of the Fourth Amendment. Second, it is argued in the alternative that, even if an inventory is a search, it is reasonable and thus constitutional under the

Fourth Amendment. We proceed to an analysis of both of these asserted justifications for the inventory procedure employed here.

In structuring the concept that an inventory is not police activity within the scope of the Fourth Amendment, the People reason that searches in the constitutional sense are conducted for the purpose of discovering evidence of crime or contraband to be used in criminal prosecutions. The sole purpose of the inventory in this case and in all routine police inventories, we are told, is to identify the contents of the vehicle incident to the assumption of police custody. Rather than ferreting out evidence of crime, police inventories serve to protect the owner of the vehicle, the police, and the storage bailee by identifying the contents of the vehicle and ensuring their proper care by the police and the storage bailee. The inventory is an aid to the vehicle owner because it provides him with a detailed list of the items taken into custody by the police and stored at the police garage, and it protects both the police and the storage bailee from subsequent unfounded claims of loss or damage.

In distinguishing between an inventory and a search, reliance is placed on *People* v. *Norris* (1968) *supra,* 262 Cal.App.2d Supp. 897, which explains a source of the constricted definition of a search espoused by the People: "In the case at bar the trial court made an express finding that the officer's activity [making an inventory of the contents of an automobile involved in a collision, prior to towing the vehicle to police storage] was not a search. . . . We believe that finding is supported by the law and the evidence and affirm primarily on that ground.

"Black's Law Dictionary (4th ed. 1951) defines a search as: 'An examination of a man's house or other buildings or premises, or of his person, with a view to the discovery of contraband or illicit or stolen property, or some evidence of guilt to be used in the prosecution of a criminal action for some crime or offense with which he is charged.'

"Webster's New International Dictionary (2d ed.) gives this definition: 'To subject to a thorough inspection for an article or articles presumably concealed.'

"This requirement that a search implies a seeking for contraband or evidence of guilt which has been concealed to use it in the prosecution of a criminal action . . . appears to be the factor that distinguishes [a search from an inventory]." (*Id.* at pp. 898-899.)

It is apparent from the foregoing and other decisions that the several Courts of Appeal have adhered to a circumscribed, semantic approach in defining the scope of the Fourth Amendment's prohibition against unreasonable searches and seizures. Such a concept was expressly rejected by the

United States Supreme Court in *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]. Responding to the government's view that police stop-and-frisk activity was not within the scope of the Fourth Amendment, the court stated: "In our view the sounder course is to recognize that the Fourth Amendment governs all intrusions by agents of the public upon personal security, and to make the scope of the particular intrusion, in light of all the exigencies of the case, a central element in the analysis of reasonableness. [Citations.] This seems preferable to an approach which attributes too much significance to an overly technical definition of 'search' . . . .

"The distinctions of classical 'stop-and-frisk' theory thus serve to divert attention from the central inquiry under the Fourth Amendment—the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security. 'Search' and 'seizure' are not talismans. We therefore reject the notions that the Fourth Amendment does not come into play at all as a limitation upon police conduct if the officers stop short of something called a 'technical arrest' or a 'full-blown search.' " (*Id.* at p. 18 fn. 15, p. 19.)

In applying the strictures of the Fourth Amendment to administrative searches in *Camara* v. *Municipal Court* (1967) 387 U.S. 523 [18 L.Ed.2d 930, 87 S.Ct. 1727], the Supreme Court unequivocally rejected any narrowing of the scope of the Fourth Amendment to "the typical policeman's search for the fruits and instrumentalities of crime. . . . It is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior." (*Id.* at p. 530 [18 L.Ed.2d at p. 936].) Instead, the court suggested a broader concept of the scope of the Fourth Amendment: "The basic purpose of this Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. . . . [E]xcept in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." (*Id.* at pp. 528-529 [18 L.Ed.2d at p. 935].)

Moreover, language employed in decisions in both the Supreme Court and this court points toward rejection of the notion that a police inventory is not a search within the scope of the Fourth Amendment. (See *Harris* v. *United States* (1968) 390 U.S. 234, 236, 237 [19 L.Ed.2d 1067, 1069, 1070, 88 S.Ct. 992]; *People* v. *Williams* (1967) 67 Cal.2d 226, 230 [60 Cal.Rptr. 472, 430 P.2d 30]; *People* v. *Grubb* (1965) 63 Cal.2d 614, 618 [47 Cal.Rptr. 772, 408 P.2d 100].)

It seems undeniable that a routine police inventory of the contents of an

automobile involves a substantial invasion into the privacy of the vehicle owner. Regardless of professed benevolent purposes and euphemistic explication, an inventory search involves a thorough exploration by the police into the private property of an individual. In that process suitcases, briefcases, sealed packages, purses—anything left open or closed within the vehicle—is subjected without limitation to the prying eyes of authorities. ▆▆ Merely because the police are not searching with the express purpose of finding evidence of crime, they are not exempt from the requirements of reasonableness set down in the Fourth Amendment. Constitutional rights may not be evaded through the route of finely honed but nonsubstantive distinctions.

Purely and simply the police inventory conducted here was a police search. Therefore, we disapprove those cases which have suggested that a police inventory may be validated without reference to the requirements of the Fourth Amendment.

We proceed to consider the People's alternative contention—that the inventory of the contents of petitioner's vehicle and the seizure of the bag of marijuana constituted a valid search and seizure under the Fourth Amendment.

At the outset, it may be helpful to briefly review the manner in which the Fourth Amendment has been applied to searches of automobiles. ▆▆ The basic concept remains as we stated it in *People* v. *Burke* (1964) 61 Cal.2d 575, 578 [39 Cal.Rptr. 531, 394 P.2d 67]: "Where officers are not responding to an emergency there must be compelling reasons and exceptional circumstances to justify a search in the absence of a search warrant." (See also *Chambers* v. *Maroney* (1970) 399 U.S. 42, 51 [26 L.Ed.2d 419, 428, 90 S.Ct. 1975].) Exceptions to the warrant requirement have been recognized in the interests of protecting the safety of the police and the integrity of evidence, and thus warrantless searches incident to lawful arrests are constitutional. (See *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]; *Preston* v. *United States* (1964) 376 U.S. 364 [11 L.Ed.2d 777, 84 S.Ct. 881]; *People* v. *Burke* (1964) *supra,* 61 Cal.2d 575.) Because of the mobility of automobiles, warrantless searches have been upheld when the searching officers have probable cause to believe the vehicle contains articles lawfully subject to seizure. (See *Chambers* v. *Maroney* (1970) *supra,* 399 U.S. 42; *Carroll* v. *United States* (1925) 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280].) ▆▆ And automobiles lawfully held by the police as evidence of crime preparatory to instituting forfeiture proceedings may be searched by police without a warrant, as in *Cooper* v. *California* (1967) 386 U.S. 58 [17 L.Ed.2d 730, 87 S.Ct. 788].

In the instant case, the exigent circumstances which justify the warrantless search are said to arise out of the custody and control of petitioner's automobile by the police, as authorized by Vehicle Code sections 22651 and 22850. The People contend the inventory search into the closed case was reasonably necessary to protect petitioner's personal property from loss or damage and to protect the police and storage bailee from unfounded tort claims. When subjected to analysis, this rationale for the search and seizure is superficial and without substantial merit in an area of constitutional protection.

The interests of a vehicle owner are said to be protected by police inventory because the procedure provides the owner with a detailed list of the articles taken into custody by the police, an itemization he can use in making valid claims for loss or damage against the police and the storage bailee. Also, the inventory brings to light articles of special value or of a perishable nature which might require unusual care by the police and the storage bailee.

This contention is rebutted by recognition of the vehicle owner's countervailing interest in maintaining the privacy of his personal effects and preventing anyone, including the police, from searching suitcases, and other closed containers and areas in his automobile at the time the police lawfully remove it to storage. In weighing the necessity of the inventory search as protection of the owner's property against the owner's rights under the Fourth Amendment, we observe that items of value left in an automobile to be stored by the police may be adequately protected merely by rolling up the windows, locking the vehicle doors and returning the keys to the owner. The owner himself, if required to leave his car temporarily, could do no more to protect his property. In the instant case, because the automobile involved was a convertible, adequate protection of valuables could be achieved by raising the top or, if necessary, by moving visible items, like the small suitcase, into the trunk for safekeeping.

■ We have no doubt that the police, in the course of such valid protective measures, may take note of any personal property in plain sight within the automobile being taken into custody. Any objects clearly visible without probing—including the suitcase in this instance—may be listed in an inventory or other police report. (See *Harris* v. *United States* (1968) *supra,* 390 U.S. 234; 236 [19 L.Ed.2d 1067, 1069].) What concerns us here is the reasonableness of the search *into* the closed suitcase.

It is significant that all but two of the Court of Appeal opinions relied upon by the People as authority for the inventory search of vehicles in

lawful police custody involved inventories made after the driver of the vehicle was arrested. (Veh. Code, § 22651, subd. (h).) Thus, in those circumstances, unlike the instant case, the drivers of the vehicles were on the scene and the police could have readily ascertained their preference for the care of their personal property. There is little doubt that all of them would have preferred, for protection of their property, that the police simply close the windows and lock the doors, rather than search the contents of their cars. Nevertheless, in not one of those cases did the Court of Appeal suggest that the police might have inquired of the owner what he wanted done to safeguard his property.[2] Thus we find unpersuasive the contention made by the People that the inventory of contents not within plain sight is reasonable because it is necessary to protect the property for the benefit of the vehicle owner.

The contention that the police inventory search is necessary to protect the police and the storage bailee from tort claims is even less convincing. ■ Several of the Court of Appeal opinions cited by the People, beginning with *People* v. *Roth* (1968) *supra,* 261 Cal.App.2d 430, have suggested that the police, as involuntary bailees of automobiles taken into custody, have the civil obligation to inventory the contents of such vehicles for the protection of the owners. This proposition is without legal foundation. While the police are involuntary bailees within the definition of Civil Code section 1815,[3] the statutory duty of care imposed on such bailees is limited by Civil Code sections 1845 and 1846 which provide that an involuntary bailee has only the obligation to use "slight care for the thing deposited." (See 7 Cal.Jur.2d, Bailments, § 31, at p. 411.)[4] Since the police are not liable for ordinary negligence in handling automobile contents it cannot be urged seriously that they fail to adequately fulfill their duty by rolling up the windows and locking the doors of vehicles taken into custody.

The Court of Appeal in *Roth* relied upon *People* v. *Gonzales* (1960) 182 Cal.App.2d 276 [5 Cal.Rptr. 920]. In that case, a search by hospital

---

[2]Indeed, in *People* v. *Gil* (1967) *supra,* 248 Cal.App.2d 189, the court upheld an inventory search even though the petitioner being arrested requested that his car not be inventoried and that it be left at its parking lot location for a friend to pick it up.

[3]Civil Code section 1815 provides as follows: "An involuntary deposit is made: 1. By the accidental leaving or placing of personal property in the possession of any person, without negligence on the part of its owner; or, 2. In cases of fire, shipwreck, inundation, insurrection, riot, or like extraordinary emergencies, by the owner of personal property committing it, out of necessity, to the care of any person."

Section 1816 states that "[t]he person with whom a thing is deposited in the manner described in the last section is bound to take charge of it, if able to do so."

[4]Civil Code section 1845 states: "An involuntary deposit is gratuitous, the depositary being entitled to no reward." Section 1846 provides: "A gratuitous depositary must use, at least, slight care for the preservation of the thing deposited."

attendants for identification in the clothing of a man brought to the hospital unconscious due to a severe abdominal knife wound was upheld. The decision was based on the statutory requirement that hospital employees report to the police the identity of all persons admitted with knife and gunshot wounds. (Pen. Code, §§ 11160-11162.) Marijuana found within the scope of the identity search was held admissible. In the course of its opinion, the *Gonzales* court, at page 279, also noted that a hospital "would undoubtedly become the involuntary bailee of property carried on the person of an unconscious patient brought to it under conditions of emergency. . . . To take such property from the clothing of the patient, make a written list of it and put it in a safe place or hands for preservation would be the normal and reasonable act of a hospital attendant for the protection of both the hospital and the patient. Criticism of a hospital for such an act, we believe to be completely unwarranted."

It is apparent that the court in *Gonzales* did not ground its holding on an analysis of the law of bailments and the duty of an involuntary bailee. But, in any event, the circumstances in *Gonzales,* involving hospital and not law enforcement personnel, are plainly distinguishable from those attendant in police inventory searches. The clothing of an unconscious man brought to a hospital of necessity must be taken from his person to permit medical treatment. Thus, hospital personnel must store the clothing and its contents temporarily for safekeeping. The problem of automobiles taken into police custody is entirely different. The vehicle must be stored for safekeeping, but the contents need not be examined or removed because they may be readily and adequately protected by locking the vehicle. Perhaps, in the case of convertibles, articles on the front or back seats might be moved to the trunk for safekeeping if for some reason the top cannot be conveniently secured. In no case is an inventory of items not within plain sight essential to safeguard the contents or to fullfill a "slight" duty of care.[5]

The storage bailee, because he has a lien upon the automobile and its contents to pay storage and towing charges (Veh. Code, § 22851), is defined as a "depositary for hire" who has a duty to "use at least ordinary care for the preservation of the thing deposited."[6] ■ But even a duty

---

[5]In the event that the vehicle owner is on the scene at the time of police removal, the police should ascertain his preference for the protection of his own property. For example, a convertible owner might not want the officer to open the trunk; in that case, the officer would be fulfilling his duty to the owner by taking less protective measures.

[6]Civil Code section 1851 provides as follows: "A deposit not gratuitous is called storage. The depositary in such case is called a depositary for hire." Section 1852 states that "[a] depositary for hire must use at least ordinary care for the preservation of the thing deposited."

of ordinary care does not require the storage bailee to inventory contents not in plain sight in automobiles he retains. In *Homan* v. *Burkhart* (1930) 108 Cal.App. 363 [291 P. 624], a depositary for hire was held not to be liable for the contents of baggage left in an automobile he was storing. Because the bailee was not informed of the value of the contents of the vehicle, he could not be held accountable for the loss of those contents. The court relied on Civil Code section 1840 which provides that "[t]he liability of a depositary for negligence cannot exceed the amount which he is informed by the depositor, or has reason to suppose, the thing deposited to be worth." Thus, the police inventory search is not necessary to fulfill the duty of a storage bailee; rather it might result in increasing that duty by making the bailee aware of the contents of the vehicle he is storing.

The People offer an additional basis to sustain the reasonableness of the search of petitioner's vehicle: that custody of the automobile by the police automatically justifies the search of the automobile. The origin of this bootstrapping doctrine would seem to be several of the seminal Court of Appeal cases which validated the inventory search. Thus, in *People* v. *Nebbit* (1960) *supra*, 183 Cal.App.2d 452, 460-461, the court stated: "Viewed from another approach, we deem that no seizure existed, for both the [marijuana cigarettes] were legally in the possession of the officers, predicated on that line of authority holding that if a vehicle was legally in the possession of the police as incident to its having been impounded,[7] the contents of the car were also legally in their possession." Similarly, in *People* v. *Ortiz* (1956) *supra*, 147 Cal.App.2d 248, the Court of Appeal validated an inventory search incident to removal of the vehicle of an arrested drunk driver, partially on the following ground: "Defendant's car was legally in [the officer's] possession as an incident of its impounding. Its contents also were legally in his possession. Therefore possession of the marijuana was legally obtained by the officer. Where an automobile is lawfully in the custody of a peace officer, such contraband articles as are contained in it are legally in the possession of such officer. . . ." (*Id.* at pp. 250-251.)

It is clear that mere legal custody of an automobile by the police does not create some new possessory right to justify the search of that vehicle. In *Cooper* v. *California* (1967) *supra*, 386 U.S. 58, 61 [17 L.Ed.2d 730, 733], the United States Supreme Court pointed out that " 'lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it.' " The court indicated that

---

[7]By use of the word "impounded," the court was not referring to the process of impounding a vehicle as evidence pending forfeiture, as in *Cooper* v. *California* (1967) *supra*, 386 U.S. 58. *Nebbitt* involved a typical inventory search incident to removal and storage.

"the reason for and nature of the custody may constitutionally justify the search," and it held that custody of an automobile held as evidence of crime and pending forfeiture was such custody. And in *Chambers* v. *Maroney* (1970) *supra,* 399 U.S. 42, the Supreme Court validated a search of an automobile in lawful police custody only because there was probable cause to believe it contained weapons and stolen money.

In *People* v. *Burke* (1964) *supra,* 61 Cal.2d 575, the police had lawful custody of the automobile of a suspect arrested on suspicion of burglary. Nevertheless, this court invalidated a search of the vehicle at the police storage lot. We explicitly rejected the People's contention that the authority to remove and store the vehicle under Vehicle Code sections 22651, subdivision (h), and 22850 encompassed authority to search: "The officers were authorized by these sections to remove defendant's car from the highway and impound it but the sections do not purport to authorize the making of a search." (*Id.* at p. 580.)

In a final effort to justify the search in the instant case, the People refer us to the recent United States Supreme Court decision in *Wyman* v. *James* (1971) 400 U.S. 309 [27 L.Ed.2d 408, 91 S.Ct. 381]. In that case, the court held that conditioning public welfare assistance on the consent of recipients to occasional home visits by social workers was constitutional and did not involve unreasonable searches under the Fourth Amendment. In the course of its opinion, the court noted that a warrant procedure might provide little protection in a welfare context. The People contend in the case at bar that a warrant requirement would be similarly inappropriate. The contention is specious.

It is undeniable that, under the facts before us, as in the inventory context generally, there could be no basis upon which a magistrate might issue a search warrant. The inventory, by its nature, involves a random search of the articles left in an automobile taken into police custody; the police are looking for nothing in particular and everything in general. But this fact does not justify the search and establish its constitutionality. To the contrary, a random police search is the precise invasion of privacy which the Fourth Amendment was intended to prohibit. We are not dealing here with a case remotely analogous to *Wyman,* which involved visits by caseworkers in a civil setting and within the peculiar context of the welfare system.

We conclude that there were no circumstances in the instant case to justify the search of the contents of petitioner's automobile without a warrant. The search was not incident to lawful arrest, based on probable

cause to believe the vehicle contained contraband, or justified by the peculiar nature of the police custody involved. Nor were there exigent circumstances which made the search reasonable and necessary. The line of authority in the Courts of Appeal which purports to validate an inventory of articles not in plain sight is disapproved.

 Let a peremptory writ of mandate issue as prayed.

Wright, C. J., Peters, J., Tobriner, J., and Sullivan, J., concurred.

**BURKE, J.**—I concur with the result reached by the majority herein, for I agree that the opening of petitioner's suitcase and inspection of its contents constituted an unreasonable search, violating her reasonable expectation of privacy. (*People* v. *Bradley,* 1 Cal.3d 80, 84 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *Edwards,* 71 Cal.2d 1096, 1104-1105 [80 Cal. Rptr. 633, 458 P.2d 713].) I would emphasize, however, that our decision in no way interferes with or impinges upon the customary authority of the police to inspect and inventory all items of personal property left in plain sight within an automobile or other vehicle in police custody.

As pointed out in the numerous Court of Appeal cases cited by the majority, the routine practice of making such inventory inspections is reasonably necessary to safeguard the owner's property from loss or damage,[1] and to protect the police and storage bailee from unfounded claims.[2] Although, as the majority point out, the foregoing considerations do not furnish the police an excuse for rummaging through closed suitcases or sealed packages, the police do have the authority, and indeed the responsibility, to inspect and inventory all items of personal property in plain sight within the vehicle and, if necessary, to lock these items in the trunk or transfer them to some other secure place for safekeeping. If, in the course of such activity, the police observe contraband or other incriminatory evidence they may seize it, for it is well established that "objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. [Citations.]" (*Harris* v. *United States,* 390 U.S. 234, 236 [19 L.Ed.2d

---

[1]An actual inventory inspection would be appropriate to determine the existence of any perishables or valuables requiring for their protection measures other than simply locking them in the car.

[2]Although the risk of successful claims may be small, the inventory would discourage the intial assertion of such claims, thereby protecting the police and storage bailee's reputation from false accusations of theft or neglect.

1067, 1069, 88 S.Ct. 992].) The "plain sight" rule recognizes that no citizen has a reasonable expectation of privacy with respect to unconcealed items within a vehicle in police custody. (See *People* v. *Bradley, supra,* 1 Cal.3d 80, 85.)

**McCOMB, J.**—I dissent. I would deny the writ. (Cal. Const., art. VI, § 13.)

The petition of the real party in interest for a rehearing was denied June 9, 1971.