Bobby FRUIT, a/k/a Bobby Joe Fruit, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–155.

Court of Criminal Appeals of Oklahoma.

Nov. 5, 1974.

Charles W. Wolfe, Woodward, for appellant.

Larry Derryberry, Atty. Gen., Kenneth L. Delashaw, Jr., Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Judge:

Appellant Bobby Fruit, a/k/a Bobby Joe Fruit, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Woodward County, Case No. CRF–73–22, of the offense of Burglary in the Second Degree, in violation of 21 O.S. § 1435, After Former Conviction of a Felony. At the conclusion of his two-stage trial, the jury recommended, and the trial court imposed, a sentence of ten (10) years imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

Defendant was convicted of a burglary of a resort cabin at Boiling Springs State Park near Woodward, in which the cabin was broken into and several items of park property (linens, silverware, and blankets) were stolen. As to the circumstances surrounding the burglary, the State introduced the testimony of one of defendant's two alleged accomplices, Larry McGowan. McGowan testified that he, defendant, and a third companion, Louis Christensen, drove to the unoccupied cabin in defendant's car. After prying the door open with a screwdriver, they removed the park property in question, putting most of it in the trunk of defendant's car. After the three returned to Woodward at approximately 2:00 a. m., defendant was stopped and arrested by a Woodward police officer for running a stopsign and for driving without a license and under suspension. During the ensuing inventory search of defendant's car, the stolen items were discovered. Upon observing the park's insignia embossed on the items, the police made further investigation which revealed that one of the park cabins had been burglarized. In the interest of brevity, further discussion of the facts will be omitted except as they relate to defendant's four propositions of error.

In his first two propositions, combined here for purposes of discussion, defendant alleges that the stolen items found in the

trunk of his car, should have been suppressed as the product of the above-mentioned inventory search, which defendant claims was illegal. Further, for the same reasons, he argues that the police officers who testified at trial should not have been allowed to describe the conduct and results of the inventory search. Before passing on defendant's argument we will carefully review the facts surrounding the search, as the validity of any search procedure depends upon the facts and circumstances in the particular case.

The first police officer to observe defendant's car following the alleged burglary, was Officer Gary Teter. He testified that he and his partner, Randy Lahann, at approximately 2:00 a. m. on April 16, 1973, observed defendant's car pull normally out of a supermarket parking lot in downtown Woodward. His suspicion aroused by a carload of boys driving about at such a late hour, the officer followed them for a few blocks. After observing defendant's car failing to stop for a stop sign, he decided to arrest him on that charge, and stopped him. Two other Woodward policemen, in a backup unit, arrived momentarily. Defendant stated that he did not have a driver's license, as he was driving under suspension. At that point, Officer Teter decided to arrest defendant on the additional charge of driving without a license, and asked the backup officers, Selman and Barker, to "check out" the other two passengers in defendant's car. The backup officers, who were acquainted with McGowan and Christensen, felt that McGowan was intoxicated,[1] and discovered that Christensen had no driver's license, and thereupon ordered the two to go home on foot. When the two passengers claimed ownership of some property in the back seat of defendant's car, the two officers allowed them to carry it off with them. Included was an ice chest and beer, as well as two blankets which, according to the testimony of McGowan, had been stolen from the park. Selman and Barker then began an inventory of the remaining contents of defendant's car. As defendant was to be taken into custody, the officers determined that his car would be impounded, and Selman and Barker proceeded to inventory its contents at the scene, pursuant to usual police department practice. Though defendant may have been present at the inception of the inventory, he was taken to police headquarters three to five minutes later in Officer Teter's patrol unit and the rest of the inventory was conducted outside his presence. The officers testified that they had no knowledge of the burglary until the park property was discovered during the inventory. The car was then turned over to a wrecker, and placed in an enclosed "bullpen" area used to secure impounded vehicles.

■ On appeal, the State seeks to justify the inventory on the ground that it is reasonable to list the contents of a vehicle to be impounded, following a lawful arrest, in order to protect the property interest of the arrestee, and also to protect the police officers from later possible charges of theft of the vehicle's contents during impoundment.

While he admits that some courts have upheld inventory searches on such grounds, defendant argues that four instances of police conduct in the instant case preclude the State from claiming such justification here. In particular, defendant claims (1) he was not allowed to observe the inventory to challenge its correctness; nor was he (2) provided a copy of the inventory list filled out by the officers; (3) also, argues defendant, the officers gave away part of the car's contents to McGowan and Christensen without consulting defendant to see if it was his; (4) and further, the vehicle was not locked when it was turned over to the wrecker driver for impoundment.

1. McGowan testified that he was "feeling his beer," but did not think that he had been drunk. [Tr. 72]

These four facts, says defendant, indicate that the officers' motives were simply to rationalize an unreasonable warrantless search, rather than the stated purpose of protection of the arrestee's property and the officers taking the inventory.

We find that none of the four instances of alleged police misconduct is sufficient to undermine what we view as an otherwise valid inventory search. First, we note that Officer Teter lawfully arrested defendant for running a stop sign. At that point he could have arrested him for that crime. The fact that defendant was driving under suspension provided another justification, if any was needed, for the arrest and being taken into custody. The arrest being lawful, we next consider whether the vehicle was lawfully impounded. We find that it was, as the police were not obliged to leave the vehicle unattended after defendant was taken into custody. This is one of the "certain situations" in which municipalities may properly authorize the impoundment of vehicles, as discussed recently in State v. Shorney, Okl.Cr., 524 P.2d 69 (1974).[2]

Having established the lawfulness of the arrest and the validity of the impoundment, we are next faced with the question of the reasonableness of the inventory then performed. We agree with defendant that inventory searches are not exempt from Fourth Amendment standards of reasonableness.[3] Our inquiry narrows to the question of whether the four instances of alleged police misconduct cited by defendant renders the inventory in question unreasonable. We find that they did not, and that the instant inventory search was reasonable and proper in line with prior cases decided by this Court. See Bennett v. State, Okl.Cr., 507 P.2d 1252 (1973).

First, we note that no authority has been cited to the effect that a defendant must be present for the inventory search, or that a defendant must be afforded a copy of the inventory list. We decline to so require. Second, the fact that the officers allowed McGowan and Christensen to leave with some of the car's contents does more harm to defendant's position (that the officers had some sinister motive to the search), than it does to the rationale for the inventory put forth by the State (i.e. that they acted to protect defendant's property and to preclude their own possible liability should any of defendant's property be mislaid during impoundment). While it may have denoted some degree of carelessness on the part of the officers, we are not persuaded that it destroys the otherwise acceptable basis for the search. Finally, the fact that the vehicle was not locked when turned over to the wrecker is immaterial, given the fact that it was kept securely in a locked enclosure as soon as it arrived at the wrecker's yard.

Accordingly, we find defendant's first two propositions of error to be without merit.

In his third proposition, defendant argues that the trial court failed to instruct the jury as to the caution and care with which to assess the testimony of accomplice Larry McGowan; however, defendant has failed to support this proposition with the required citation of authority. We must, therefore, refer to the often repeated rule enunciated in Sandefur v. State, Okl.Cr., 461 P.2d 954 (1969):

"It is necessary for counsel for plaintiff in error not only to assert error, but to support his contentions by both argument

---

2. Defendant does not argue that the car coudl have been turned over to McGowan or Christensen, one being either intoxicated or at least "feeling his beer," and the other who did not have a driver's license. Had such argument been made, it would have failed on those bases. Indeed, even had McGowan and Christensen been capable of driving, defendant did not request that they take custody of the car, nor were the officers obliged to advise defendant of such a possibility. See State v. Shorney, supra.

3. Mozzetti v. Superior Court of Sacramento County, 4 Cal.3d 699, 94 Cal.Rptr. 412, 484 P.2d 84 (1971).

and citations of authority. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this Court will not search the books for authorities to support the mere assertion that the trial court has erred."

As to the substance of defendant's argument, we have examined both the trial court instruction which was given, and the set of requested instructions submitted by defendant, and find that those given adequately covered the treatment to be given the witness' testimony by the jury. We, therefore, find defendant's third proposition of error to be without merit.

■ In his fourth proposition, defendant raises two objections to the State's use of two prior convictions to enhance punishment during the second stage of trial. The first objection is to the effect that the State failed to prove that the former convictions had reached final disposition. In this regard we note that the State, upon motion granted by this Court, has supplemented the appellate record in the instant case, with copies of the Criminal Appearance Docket in two cases from the District Court, Pottawatomie County, wherein defendant was convicted in 1966 of the crime of Second Degree Burglary, and in 1967, of the offense of Carrying a Firearm, After Former Conviction of a Felony. At trial, the State attempted to prove the prior convictions through the introduction of certified copies of Judgments and Sentences, and through the testimony of two Pottawatomie County law enforcement officers who testified that they had transported defendant to the Oklahoma State Penitentiary pursuant to the Judgment and Sentence in each case. The officers further testified that neither case had ever been appealed "as far as they knew." This, argues defendant, did not constitute competent evidence of the finality of either prior conviction. The question before us, then, is whether the State has cured whatever defect there might have been by supplementing the appellate record as described above. We find that it has. In Tucker v. State, Okl.Cr., 499 P.2d 458 (1972), the prosecution failed to bring out on cross-examination that a defendant had been represented by counsel at trials leading to prior convictions. However, the Attorney General had supplemented the record, as in the instant case. We stated:

"Although the state did not offer proof that the defendant was represented by counsel on the former convictions brought out during his cross-examination, the Attorney General has offered proof that the defendant was represented by counsel, Mr. John D. Harris, on each of the three convictions brought out during cross-examination. See Scobie v. State, Okl.Cr., 481 P.2d 781 (1971). We therefore conclude that the record is not silent as to representation by counsel on the former felony convictions, and thus find no error in this regard."

The Criminal Appearance Docket with which the Attorney General has supplemented the instant record, reflects that no record was ever perfected for appellate purposes in either case. As we stated in Yoder v. State, Okl.Cr., 508 P.2d 1119, 1120 (1973):

". . . We are of the opinion the judgment and sentence became final at the point in time the record was not perfected . . ."

We, thus, find that the record is sufficient to show the finality of defendant's prior convictions, and that their use to enhance punishment was not invalid for that reason.

■ Defendant's second objection to the use of the prior convictions was to the effect that, as he was allegedly under the age of 18 at the time of both prior convictions, that they could not properly be used to enhance punishment under the authority of Lamb v. Brown, 456 F.2d 18 (10th Cir. 1972). Defendant argues that two cases

pending before the 10th Circuit at present lend support to his proposition, in that they will hold *Lamb* retroactive.

We find it unnecessary to reach the merits of defendant's argument, however, as a look at the Criminal Appearance Docket, mentioned above, shows that in one of the prior convictions (case no. 6573, Carrying Firearm, After Former Conviction of a Felony), defendant clearly plead that he was 18 years old at the time of his guilty plea. That being the case, defendant's argument becomes moot as to that conviction. This, in turn, suffices to support the jury's verdict as to former convictions, regardless of the validity of the use of the other prior conviction. Indeed, as the defendant was sentenced to the ten year statutory minimum for conviction after former conviction, it is immaterial, for our purposes, whether or not the first conviction (case no. 6434, Burglary Second Degree), was correctly submitted to the jury. We therefore do not speak to that issue, but instead, dismiss defendant's fourth proposition of error as being without merit.

For all the above and foregoing reasons, the judgment and sentence appealed from is affirmed.

BLISS, P. J., concurs.

BRETT, J., specially concurs.

BRETT, Judge (specially concurring).

I concur in this decision after a careful study of the facts involved. Under the circumstances of this case, the inventory was not improper and consequently the subsequent seizure of the stolen property was legal. However, this type of search, i. e. inventory search of impounded vehicles, can become a matter of abuse; and it is abundantly clear that any inventory search which is purely exploratory must be illegal. Consequently, each case must stand or fall on its own facts.

The Washington Supreme Court provided a lengthy discussion on inventory searches in State v. Montague, Wash., 438 P.2d 571 (1968). That Court summarized the situation as follows:

"When, however, the facts indicate a lawful arrest, followed by an inventory of the contents of the automobile preparatory to or following the impoundment of the car, and there is found to be reasonable and proper justification for such impoundment, and where the search is not made as a general exploratory search for the purpose of finding evidence of crime but is made for the justifiable purpose of finding, listing, and securing from loss, during the arrested person's detention, property belonging to him, then we have no hesitancy in declaring such inventory reasonable and lawful, and evidence of crime found will not be suppressed." at p. 574, 438 P.2d. .

In the instant case all of those conditions were met and therefore, I concur in this decision, insofar as the other evidence was sufficient to sustain the conviction.