52 Cal.Rptr.3d 330 (2006)
145 Cal.App.4th 1320
In re RAYMOND C, a Person Coming Under the Juvenile Court Law.
The People, Plaintiff and Respondent,
v.
Raymond C., Defendant and Appellant.
No. G035822.
Court of Appeal of California, Fourth District, Division Three.
November 20, 2006.
As Modified on Denial of Rehearing December 20, 2006.
Jean Ballantine, under appointment by the Court of Appeal, Los Angeles, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Senior Assistant Attorney General, Barry Carlton and Jeffrey *331 J. Koch, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
ARONSON, J.
The juvenile court found true the allegation minor Raymond C. drove a vehicle while under the influence of alcohol (Veh. Code, § 23152, subd. (a); all further statutory citations to this code unless otherwise noted) and with a blood alcohol level of 0.08 percent or more (§ 23152, subd. (b)). Minor argues the juvenile court erred when it denied his motion to suppress evidence of his intoxication obtained when the detaining officer stopped his vehicle for failure to display a rear license plate. (§ 5200.) For the reasons stated below, we affirm.

I
Around 1:00 a.m. on Sunday morning, October 24, 2004, Fullerton Police Officer Timothy Kandler observed a black Acura drive past his parked patrol car. Kandler noticed the Acura did not have a rear license plate or any automobile dealer designation or advertising in its place. As he pulled behind the car he saw no registration papers or Department of Motor Vehicles (DMV) paperwork displayed in the rear window. From his vantage point behind the Acura, Kandler could not see if there were any registration papers attached to the windshield. He activated his lights and siren and pulled the car over for a "possible violation" of section 5200.[1]
He approached the driver, minor Raymond C., and asked for his license, registration, and proof of insurance. Raymond provided his license and told Kandler the temporary registration was attached to the front window of the car. Kandler detected the odor of alcohol on minor's breath and, after giving minor several field sobriety tests, arrested him for driving under the influence of alcohol.
Minor's father testified he purchased the new 2005 Acura on October 2, 2004. He removed the dealer's advertising plates but left undisturbed the temporary registration affixed to the lower right side of the windshield. The registration was in the same place on the windshield at the time of the stop. The car still looked new on October 24. He received permanent plates from DMV in December 2004.
The juvenile court denied minor's suppression motion, finding there was a reasonable basis to detain minor and investigate a potential violation of section 5200. Minor subsequently admitted driving under the influence of alcohol and with a blood alcohol level of .08 percent or more. (§ 23152, subds.(a) & (b).) The court declared him a ward of the court and placed him on probation subject to various terms and conditions, including a 10-day court work program.

II
Minor argues Officer Kandler unlawfully detained him and therefore the juvenile court should have suppressed evidence derived from the stop. We disagree.
"In ruling on a motion to suppress, the trial court must find the historical *332 facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the court's resolution of the factual inquiry under the deferential substantial evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review." (People v. Ramos (2004) 34 Cal.4th 494, 505, 21 Cal.Rptr.3d 575, 101 P.3d 478.)
"[P]ersons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers." (Delaware v. Prouse (1979) 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660.) In contrast, officers having an articulable and reasonable suspicion that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, may detain the driver to check his or her driver's license and the vehicle's registration. (Ibid.; see Pennsylvania v. Mimms (1977) 434 U.S. 106, 109, 98 S.Ct. 330, 54 L.Ed.2d 331 [expired registration tags justified traffic stop].)
The facts here are few and undisputed. Minor's vehicle lacked a rear license plate, and Kandler looked for but did not see any temporary registration. Thus, the officer suspected a violation of section 5200, subdivision (a), which provides: "When two license plates are issued by the department [of motor vehicles (DMV)] for use upon a vehicle, they shall be attached to the vehicle for which they were issued, one in the front and the other in the rear."
The parties developed scant evidence at the hearing concerning the new vehicle registration process. We judicially notice (see Evid.Code, § 452, subd. (h)) DMVs Handbook of Registration Procedures (see http://www.dmv.ca.gov/pubs/reg_hdbk_pdf/ ch02.pdf (handbook)). Pursuant to the handbook, a new car dealer generally affixes the perforated bottom portion of DMV's Application for Registration of New Vehicle (REG 397), called a "New Vehicle Dealer Notice Temporary Identification" (temporary tag), to a window of the new car. The temporary tag includes a preprinted sequential number, the vehicle's unique identification number, the dealer and salesperson identification numbers, the make and body type of the car, the date first sold as a new vehicle, the name and address of the purchaser, and the odometer reading.
For privacy purposes, DMVs handbook directs the dealer to fold the temporary tag so that only the preprinted number and vehicle descriptive information are displayed. Preferred placement is in the lower rear window. If this placement obscures the information, the dealer should relocate the temporary tag to the lower right corner of the windshield or the lower right portion of a side window.
A statement on the face of the temporary tag authorizes operation of the vehicle until the buyer receives the license plates and registration card. The tag further advises the purchaser to allow 90 days for the dealer and DMV to process the application and to contact DMV if the registration card and license plates have not been received. Thus, the temporary tag serves as a "report-of-sale form" pursuant to section 4456. This section provides that a vehicle dealer using a numbered report-of-sale form issued by DMV "shall attach for display a copy of the report of sale on the vehicle before the vehicle is delivered to the purchaser." (§ 4456, subd. (a)(1).) A "vehicle displaying a copy of the report of sale may be operated without license plates or registration card until either of the following, whichever occurs first: [¶] (1) The license plates and registration card are received by the purchaser. [¶] (2) A *333 six-month period, commencing with the date of sale of the vehicle, has expired." (§ 4456, subd. (c).)
Traffic officers usually approach vehicles from the rear, but section 4456 does not require placement of temporary registration papers on the rear window or in some other location visible from the back. Minor states the "registration papers were fastened in conformity with ... section 26708, subdivision (b)(3)." Section 26708 does not specifically concern registration papers.[2] While a motorist may display a temporary tag on the windshield without violating section 26708, that section does specify this is where the tag must or should be displayed.
Minor correctly observes that "[l]ack of the dealer's paper advertising plate on the rear of a brand-new automobile is not a Vehicle Code violation...." And, as noted above, placing the temporary tag in the windshield is authorized by DMV's handbook and not prohibited by the Vehicle Code. We are sympathetic to minor's argument that police officers should not be permitted to "pull over new car purchasers who properly display their new car registration papers in the front windshield, in full compliance with the Vehicle Code." But this is not the focus of our inquiry. As the Supreme Court recently observed in a similar setting, "The question for us, though, is not whether [the] vehicle was in fact in full compliance with the law at the time of the stop, but whether [the officer] had `"articulable suspicion"' it was not." (People v. Saunders (2006) 38 Cal.4th 1129, 1136, 45 Cal.Rptr.3d 66, 136 P.3d 859 (Saunders); citing Illinois v. Rodriguez (1990) 497 U.S. 177, 184, 110 S.Ct. 2793, 111 L.Ed.2d 148 ["`reasonableness,' with respect to this necessary element, does not demand that the government be factually correct in its assessment"].) The possibility of an innocent explanation for a missing rear license plate would not preclude an officer from detaining the motorist to investigate the potential Vehicle Code violation. (Ibid.; see Illinois v. Wardlow (2000) 528 U.S. 119,125-126,120 S.Ct. 673, 145 L.Ed.2d 570; accord, People v. Leyba (1981) 29 Cal.3d 591, 599, 174 Cal.Rptr. 867, 629 P.2d 961.)
Here, the juvenile court found the officer entertained a reasonable suspicion minor had not complied with section 5200, and substantial evidence supports this conclusion. The officer testified that as he drove behind the minor he could not see whether a temporary tag had been placed on the windshield, but observed the car did not have a rear license plate. Indeed, the officer noticed the license plate holder contained nothing at all, an unusual enough occurrence for the officer to note it in his report. True, there may have been an innocent explanation for the absence of the license plate, but as Saunders emphasized, an officer does not act unreasonably in making a stop for the limited purpose of determining whether there was in fact a legitimate reason for driving without a rear license plate. (Saunders, supra, 38 Cal.4th at p. 1136, 45 Cal.Rptr.3d 66, 136 P.3d 859; see also People v. Nebbitt (1960) 183 Cal.App.2d 452, 457-58, 7 Cal.Rptr. 8, disapproved on another point in Mozzetti v. Superior Court (1971) 4 Cal.3d 699, 710-712, 94 Cal.Rptr. 412, 484 P.2d 84 [failure *334 to display rear license plate as required by section 5200 furnishes justification to stop the vehicle and raises a reasonable suspicion the car had been stolen].) There are other illicit reasons why someone might operate a vehicle without plates. For example, one might remove plates, or delay installing them, to avoid red light cameras or an automated toll booth. A person might remove plates to avoid detection during or after committing a crime. Thus, the absence of a rear plate or, from the officer's vantage point, a temporary tag substituting for the plate, justified the stop.
Minor complains Officer Kandler "made no attempt to perform the slight investigation required to determine if in fact there were temporary registration papers affixed to the front windshield, either by pulling up next to [minor's] vehicle to look, or by checking with dispatch." As a practical matter, neither of minor's specific procedural suggestions was feasible at roadway speeds. The police dispatcher could not check the vehicle's registration without a license plate number, information the officer obviously did not have. And, as the Attorney General points out, it is "safer ... for the officer to stop appellant's car than to attempt to maneuver around it and try to spot a small piece of paper in the lower right corner [of] the car's windshield." We construe minor's argument to require that an officer, after stopping a motorist for failure to display a rear license plate, must first check for a temporary tag on the windshield before conversing with the driver. In other words, the officer's failure to utilize less intrusive means at the outset of the investigation required suppression of any subsequently discovered evidence demonstrating minor drove while under the influence.
There is no requirement police officers use the least intrusive means in executing a search or seizure if their actions are otherwise reasonable under the Fourth Amendment. As the Supreme Court has observed, "A creative judge engaged in post hoc evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But `[t]he fact that the protection of the public might, in the abstract, have been accomplished by "less intrusive" means does not, itself, render the search unreasonable.' [Citations.] The question is not simply whether some alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it." (United States v. Sharpe (1985) 470 U.S. 675, 686-687, 105 S.Ct. 1568, 84 L.Ed.2d 605 (Sharpe); see also Vernonia School Dist. 47J v. Acton (1995) 515 U.S. 646, 663, 115 S.Ct. 2386, 132 L.Ed.2d 564 (Vernonia) ["We have repeatedly refused to declare that only the `least intrusive' search practicable can be reasonable under the Fourth Amendment"]; United States v. Sokolow (1989) 490 U.S. 1, 11, 109 S.Ct. 1581, 104 L.Ed.2d 1 (Sokolow) ["The reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques"].) With these principles in mind, we conclude Kandler acted reasonably in contacting the minor to explain the reason for the stop.
State v. Lloyd (Iowa 2005) 701 N.W.2d 678 (Lloyd) bolsters our conclusion. There, the deputy stopped a car that had no permanent license plates. When he approached the car he noticed the driver appeared intoxicated. At a suppression motion, the defendant presented uncontroverted evidence he had a valid temporary plate taped to his car's rear window. The prosecution argued the deputy simply missed the temporary plate and that the mistake did not require suppression. The court agreed that the officer's mistake of fact did not automatically negate the validity of the stop and the question was whether the officer had an objectively reasonable *335 basis for believing the car was not in conformity with the state's traffic laws. (Id. at p. 681; see also United States v. Flores-Sandoval (8th Cir.2004) 366 F.3d 961, 962.) The court noted the deputy observed no license plate on the rear bumper, a potential violation of law, and "did not see the temporary plate. Had the facts been as [the deputy] believed them to be, he undoubtedly would have had probable cause to stop [the defendant's] car.... [¶] The only remaining question is whether [the deputy's] mistake was an objectively reasonable one. We believe it was. It was dark at the time of the stop (2:20 a.m.), and it is certainly understandable how the deputy could have missed the temporary plate. We conclude that [he] reasonably believed [the defendant] was operating his car without license plates. His decision to stop [the] car was justified and reasonable and therefore did not violate [the defendant's] Fourth Amendment rights." (Lloyd, at pp. 681-682.)
Minor relies on People v. Nabong (2004) 115 Cal.App.4th Supp. 1, 9 Cal.Rptr.3d 854 (Nabong), but it is distinguishable. There, a traffic officer stopped the defendant's vehicle because the registration sticker on the license plate had expired. The officer observed a temporary registration sticker for the current month on the rear window but continued the detention based on his experience almost half of the previous registration tags he had investigated were invalid. The Nabong court concluded no reasonable basis supported the detention because the officer "did not have any particularized belief that appellant's car was not validly registered; he only assumed based upon his experience that approximately 50 percent of the time the temporary registrations are not valid for the car on which they are placed." (Id. at p. 4, 9 Cal.Rptr.3d 854.)
Nabong lends no support to minor's argument. In contrast to the officer's decision to detain the motorist in Nabong, Kandler's observation that minor's vehicle lacked a rear license plate supported a particularized suspicion minor violated section 5200. Unlike the officer in Nabong, Kandler did not deliberately reject the significance of a temporary register sticker on the vehicle's window. Rather, he simply did not (accord, Lloyd, supra, 701 N.W.2d 678), or could not, see whether minor's vehicle had a temporary tag on the windshield from his vantage point.
Having observed nothing on his approach from the rear of the vehicle showing it was registered, Kandler was entitled to continue his investigation. During a lawful stop for a potential traffic violation, a motorist must produce a driver's license and registration upon demand. (§ 4462, subd. (a).) True, the officer could have first checked to see if there was a temporary tag on the windshield before contacting the driver. As discussed, however, the Fourth Amendment imposes no requirement that officers ascertain and execute the least intrusive search practicable. (Sharpe, supra, 470 U.S. at pp. 686-687, 105 S.Ct. 1568; Vernonia, supra, 515 U.S. at p. 663, 115 S.Ct. 2386; Sokolow, supra, 490 U.S. at p. 11, 109 S.Ct. 1581.) The circumstances presented Kandler with the choice of pursuing the information he sought verbally or visually. He could ask the driver for proof of registration or look for it on the windshield; one option was less intrusive, but neither was more or less reasonable than the other. We simply cannot say that requesting information the driver is required to provide during a lawful stop is unreasonable. In the midst of this legitimate inquiry, Kandler observed signs of intoxication that furnished probable cause for turning his investigation in a new direction.
We agree a further detention would have been unwarranted had Kandler observed *336 a valid temporary tag on the windshield before conversing with the driver. (United States v. McSwain (10th Cir.1994) 29 F.3d 558, 561 [purpose of stop satisfied when officer observed valid temporary tag; any further investigation goes beyond the initial justification for the stop and therefore exceeds scope of detention].) But even if Kandler had opted to first check the windshield for temporary tags, minor still would have no basis to complain if the officer then approached to explain the reason for the stop. A brief conversation with the driver explaining the reason for the detention without asking for a driver's license or registration does no violence to the Fourth Amendment. (Id. at p. 562.)
In sum, once the officer lawfully stopped the vehicle, it was not unreasonable for him to contact the driver to request his license and registration (§ 4462, subd. (a)) and explain the reason for the stop.[3] The officer's observations concerning minor's intoxication thus occurred during a lawful detention of the youth. Consequently, the juvenile court did not err in denying minor's motion to suppress.
Judgment affirmed.
WE CONCUR: RYLAARSDAM, Acting P.J., and FYBEL, J.
NOTES
[1] The section provides, "(a) When two license plates are issued by the department for use upon a vehicle, they shall be attached to the vehicle for which they were issued, one in the front and the other in the rear. [¶] (b) When only one license plate is issued for use upon a vehicle, it shall be attached to the rear thereof, unless the license plate is issued for use upon a truck tractor, in which case the license plate shall be displayed in accordance with Section 4850.5."
[2] Section 26708 prohibits driving a "motor vehicle with any object or material placed, displayed, installed, affixed, or applied upon the windshield or side or rear windows" (subd. (a)(2)), but exempts "[s]igns, stickers, or other materials which are displayed in a 7-inch square in the lower corner of the windshield farthest removed from the driver, signs. stickers, or other materials which are displayed in a 7-inch square in the lower corner of the rear window farthest removed from the driver, or signs, stickers, or other materials which are displayed in a 5-inch square in the lower corner of the windshield nearest the driver." (§ 26708, subd. (b)(3).)
[3] Although we are not faced with the issue, a different conclusion may result where the officer sees the temporary tags on the windshield before stopping the vehicle. An officer lacks the requisite particularized suspicion to support a detention where temporary tags are affixed in an authorized spot on the vehicle and no other suspicious circumstances are present. (United States v. Wilson (4th Cir. 2000) 205 F.3d 720, 724 [detention of motorist because officer could not read expiration date on temporary tag violated Fourth Amendment; "[u]pholding a stop on these facts would permit the police to make a random, suspicionless stop of any car with a temporary tag"].) But the legality of any temporary intrusion depends on the specific facts. Thus, an officer may detain a motorist, even if temporary tags are properly displayed, if there are other facts known to the officer raising a reasonable suspicion the car is not registered.